# PHILIP T. HALL

## vs.

# MARGARET F. ALBERTIE.

*Bill of Exceptions—Transmission of Record—Automobile Injuring Pedestrian—Contributory Negligence.*

When the appellant has prepared the bills of exception in good faith, and presented them to the court within the time allowed, that, as the result of error in their preparation, or a controversy as to what they shall contain, time is required for consideration by the court, necessitating delay in signing them, does not prejudice the appellant.                    pp. 675, 676

Delay in transmission of the record, resulting from a delay on the part of the court in signing the exceptions, does not deprive the appellant of the right of appeal.          pp. 675, 676

The action of the trial court on the prayers submitted at the conclusion of the evidence is regarded as a single ruling, to be made the subject of one bill of exceptions.        p. 676

One is not negligent, as a matter of law, in walking on the macadamized part of the highway, and whether plaintiff, struck by defendant's automobile while so doing, was guilty of contributory negligence, is a question for the jury.        p. 680

*Decided March 22nd, 1922.*

Appeal from the Circuit Court for Prince George's County (BEALL and CAMALIER, JJ.).

Action by Margaret F. Albertie against Philip T. Hall. From a judgment in favor of plaintiff for the sum of eight thousand dollars, with interest from the date of the verdict, and costs, defendant appeals.   Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and ADKINS, JJ.

*S. McComas Hawken* and *J. Wilson Ryan*, for the appellant.

*Albert M. Bouic* and *M. Hampton Magruder*, with whom was *Julian W. Whiting* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the plaintiff in the Circuit Court for Prince George's County for injuries she is alleged to have sustained by reason of the negligent operation of the defendant's automobile.

A motion has been filed by the appellee to dismiss the appeal on the ground (1) that the bill of exceptions was not filed in compliance with the rule of the circuit court, and (2) that the record was not transmitted to this Court within three months from the date of the appeal.

The record contains a certificate of the court below that Rule 22 of that court provides:

"That unless otherwise expressly allowed by the court, the bills of exceptions shall be prepared and submitted to the court within thirty days from the entry of the judgment in the case."

It appears that the judgment was entered on the 7th of June, 1921; that on the 5th of July the court below passed an order extending the time for submitting bills of exception "for thirty days from that date," and that on the 2nd of August the court granted a further extension for that purpose to August 20th, 1921. The record also contains the following certificate of the judges who presided at the trial:

"A document was placed in the hands of the court by counsel for the defendant on the 12th of August, 1921, purporting to be a bill of exceptions in the case * * * The subject-matter of said document was sev-

eral times under consideration by the court on negotia-
tions by counsel for the respective parties for settle-
ment of bills of exception by agreement.  The docu-
ment was marked 'Filed on October 26th, 1921.'  After
several changes made at the suggestion of the respec-
tive parties the bill of exceptions accompanying was
signed by the court on the 27th of December, 1921."

The affidavit of the clerk of the court below states that
upon the signing of the exceptions the record was "made up
and transmitted" to this Court "as soon as possible," and it
appears that it was filed in this Court on the 4th of January,
1922.

It thus appears that the bill of exceptions was prepared
and presented to the court within the time allowed by the
order of August 2nd, which was passed before the expiration
of the previous order (*Carter* v. *Md. & Pa. R. R. Co.*, 112
Md. 599; *Ray et al.* v. *Morse*, 140 Md. 529), and that the de-
lay in transmitting the record to this Court was due to the
fact that the exceptions were not signed by the judges of the
court below until the 27th of December, 1921.

While it is the duty of the appellant to prepare the bill of
exceptions and present it to the trial judges for their signa-
tures within the time allowed by the rule or order of court,
it is for the judges to determine what the bills of exception
shall contain.  Ordinarily when the appellant has prepared
the bills of exception in good faith and presented them to the
court within the time allowed, he has done all that is required
of him, and if, as the result of error in their preparation, or
a controversy between the parties as to what they shall con-
tain, time is required for consideration and settlement of the
matter by the court, necessitating delay in signing the ex-
ceptions and consequent delay in transmitting the record, the
appellant should not be deprived of his right of appeal be-
cause of such delay.

In this case the certificate of the judges states that the bill
of exceptions prepared by the appellant was submitted to

them on the 12th of August, and was held "under considera-
tion" pending efforts of counsel to settle "the exceptions" by
agreement, and that after making several changes suggested
by "the respective parties," the exceptions were signed on
the 27th of December, 1921. In the case of *Cochrane* v.
*Little,* 71 Md. 323, Chief Judge Alvey said: "It is the busi-
ness of the judges to see that their rulings are properly pre-
sented by the exceptions, and that the bills of exception are
properly prepared and presented by the party taking the ex-
ceptions. * * * A party should not be deprived of his right of
appeal, except where the right has been lost by his own neg-
lect or default," and in the case of *Snowden* v. *State,* 133
Md. 624, the Court said: "It thus appears that the appeal
was taken in time, that the exceptions were prepared by
counsel for the accused with reasonable promptness and sub-
mitted to the judge on two occasions within the time limited
by the previous orders regularly passed. This was all that
was required of counsel, and under the circumstances stated
it cannot be held that the delay in signing the exceptions or
transmitting the record was due to any fault of the appellant
or his counsel."

As the bill of exceptions in this case was presented to the
court below within the time allowed by its order, and as
the record was transmitted to this Court as soon as possible
after the exceptions were signed, the delay in transmitting
the record cannot be said to be due to the appellant or his
counsel, and the motion to dismiss the appeal must be over-
ruled.

During the trial three exceptions were reserved by the de-
fendant. The first of these was to a ruling of the court be-
low on the evidence, and has been abandoned in this Court.
The second was to the rejection of the defendant's first pray-
er, and the third to the rejection of his second prayer.

This Court has repeatedly said that the action of the trial
court on the prayers submitted at the conclusion of the evi-
dence is regarded as a single ruling, and should be made the

subject of one bill of exception. But notwithstanding the departure in this case from the well-settled practice in this State, we will dispose of the exceptions as if the ruling complained of was properly presented.

According to the evidence adduced by the plaintiff, she and her husband left their home at Woodmont, which is located on the Rockville pike, one of the public highways of Montgomery County, about 10.15 o'clock at night on the 23rd of May, 1919, to catch an electric car for Washington, D. C., at Edgemoor, where the railroad crosses the pike. The highway, which was macadamized, was about sixty feet wide. The macadam was sixteen feet wide, and on each side of the macadam there was a dirt path about seven feet wide. The plaintiff and her husband were walking on the right-hand or west side of the highway in the direction of Edgemoor and Washington, and on the dirt path west of the macadam, when they were struck by the defendant's automobile going in the same direction, and the plaintiff was seriously injured. The plaintiff also offered evidence tending to show that at the time of the accident the defendant's car was on the right-hand side of the road, and that the right wheels of the car were on the dirt path about four feet from the west edge of the macadam; that the road was straight, and that there was nothing to prevent the driver of the defendant's car from seeing the plaintiff and her husband; that the plaintiff did not hear the car and did not see any lights indicating that a car was approaching from the rear; that no warning or signal of its approach was given, and that the speed of the car was not reduced as it approached the place of the accident.

The defendant testified that on the night of the accident he was returning from Germantown with his family to his home on Wisconsin Avenue; "that his nephew, Harold H. Watkins, who is now dead, was driving the automobile; that when they got within the limits of Bethesda they turned the bright lights off, put on the dimmers and reduced the speed of the car to about twelve miles an hour; that when they got

within fifteen or twenty feet of the place where the accident occurred a car was proceeding north on the Rockville pike with glaring headlights in front and a spotlight on the side, which was brilliantly lighted; that the three lights blinded them completely, and immediately the driver applied his brakes in an effort to stop the car, but before the car could be brought to a stop the witness felt the car go over something that seemed to him to be a log; that when the car came to a stop witness immediately got out and went back to see what the object was, and found Mr. and Mrs. Albertie (the plaintiff and her husband) lying on the macadam about three feet from the eight-foot path which is on the right-hand side of the street going south; that the place where the accident occurred was extremely dark, and that witness, being blinded by the headlights of the other car, did not see Mr. and Mrs. Albertie until after he felt the bump, when he saw them lying back of his car on the macadam."

Frank Fisher, a witness for the plaintiff, testified, however, as follows: "that he saw the accident of the plaintiff on the 23rd of May, 1919, on the Rockville pike, near Bethesda; that the witness was driving a Stutz automobile and was riding on the front seat on the left-hand side of the car, the car being a right-hand drive; that he did not have searchlights on his car, but small dimmers, and a spotlight located on the right-hand side of his car about two and one-half feet from the steering wheel, which threw a light on his right-hand not in front of his car, and it was not turned towards the defendant's car at all; that he was traveling in a northerly direction on the Rockville pike going from Washington to Rockville, and about the point of the accident the left front and hind wheels of his car were on the macadam and the right front and hind wheels were on the sand; when he had gotten about twenty-five or thirty feet past the railroad track, which is a grade crossing at Bethesda, or Edgemoor, he observed the plaintiff and her husband walking down the road in a southerly direction in the direction of Washington from

Rockville, and on the west side of said road and walking in the sand part thereof; that he could plainly see the plaintiff and her husband walking down the road from the searchlights of the defendant's car, which was traveling in the same direction that the plaintiff was walking; that the witness observed the plaintiff fifty or seventy-five feet ahead of defendant's car; that after the witness' car had passed the plaintiff he leaned out of his car and turned his head and saw the defendant's car, which was then partly on the macadam and partly on the sand, actually run over the plaintiff and her husband while the plaintiff was walking on the sand part of the road; that witness did not hear any warning made by the defendant's car, and did not see anything to obstruct the view of the defendant or his chauffeur. After the accident he immediately went back to assist the plaintiff and her husband, and defendant told the witness that the lights of witness' car blinded him, which witness denied could have happened."

The prayers to which the defendant's exceptions refer are as follows:

1. "You are instructed that if you find from the evidence that there was a path four feet or more in width used by pedestrians at the place of the accident, and that instead of walking in the path that the plaintiff was walking on the macadam roadbed and that at the same time the driver of the defendant's automobile while exercising ordinary care was blinded by the headlights or spotlights of an approaching automobile, and being so blinded endeavored to stop the automobile, but before being able to do so, struck the plaintiff, then she is not entitled to recover and your verdict should be for the defendant."

2. "You are instructed that if you find from a preponderance of the evidence that there was a path four feet or more in width used by pedestrians at the side of the roadway at the place of the accident, then reasonable care and prudence dictated that the plaintiff should have walked therein, and if you

further find from a preponderance of the evidence that at the
time of the accident the night was dark and that the plaintiff
was walking on the macadam roadbed and that the driver of
the defendant's automobile, although exercising reasonable
care, did not see the plaintiff, as a result of which she was
struck and injured, then your verdict should be for the de-
fendant."

The most striking objection to these prayers is that they
assert the proposition that the plaintiff had no right to walk
on the macadamized part of the highway, and asked the court
to instruct the jury that, if they found from the evidence that
the plaintiff was walking on the macadam, then she was, as a
matter of law, guilty of such contributory negligence as de-
prived her of the right to recover. No authority is cited by
the appellant in support of this proposition, and it is not in
harmony with the rule recognized in this State or elsewhere.
In the very recent case of *Mears* v. *McElfish,* decided in June,
1921, and reported in 139 Md. 81, where a young girl, while
walking on the right-hand side of one of the public roads of
Allegany County, instead of on a cinder path on the left side
of the road, was struck and injured by an automobile passing
from the rear, and where the case was taken from the jury by
the lower court on the ground that there was no evidence of
negligence on the part of the defendant and that the plaintiff
had been guilty of contributory negligence, JUDGE URNER,
speaking for this Court, said: "The defendant in his car and
the plaintiff on foot were each entitled to the use of the high-
way. They had reciprocal rights and duties as to its use.
Neither could be unmindful of the fact that the road was in-
tended to be available for every legitimate purpose and method
of public travel. The driver of the automobile was obliged
to anticipate that pedestrians might be using the thorough-
fare. It was especially incumbent upon him to exercise rea-
sonable care to avoid injury to travelers who, out of regard
for their own safety, would naturally make use of the unpaved
margin. The fact that the headlights on the automobile ap-

proaching from the city may have made it more difficult for
the driver of the defendant's car to see the pedestrians on the
side of the road did not relieve him of the duty to use proper
care to observe their presence.   If he could not see them
because of any insufficiency of his own headlights, or because
of the glare of those on the approaching car, he might have
reduced the speed of his automobile and given warning signals
to any one possibly exposed to the danger of collision."   In
reference to the question of the plaintiff's negligence he said
further: "It would doubtless have been more prudent for
her to look behind her for automobiles when she saw one ap-
proaching from the front while she was walking near the edge
of the macadamized roadbed, but whether her omission to do
so under the circumstances should be regarded as negligence
on her part is a question as to which rational minds might
differ.   Unless there was clear and unquestionable negligence
in her failure to anticipate and provide against the contin-
gency that a car from the rear might be driven against her
while she was off the macadam, and without any signal being
given her of its approach, the case should be left to the jury
for determination."   See also *Biogini* v. *Steynen,* 124 Md.
369, and *Stewart Taxi-service Co.* v. *Roy,* 127 Md. 70.   In
*Berry, Automobiles* (2nd Ed.), sec. 220, it is said: "Pedes-
trians have in general, and under reasonable restrictions as to
the exercise of care by them, a right to travel anywhere upon
a public highway, and it is negligence for a driver of a vehicle
upon a public highway to recklessly run down a pedestrian
who is standing or walking with his back toward him," and
it is said in *Huddy, Automobiles* (5th Ed.), sec. 432: "As
in other cases of fellow travelers, it is the duty of the driver of
an automobile to exercise reasonable care to avoid injury to
one walking along the highway.   If the foot traveler is
oblivious of the approach of the vehicle, the driver should
give a warning of his approach."

All of the witnesses who saw the plaintiff and her husband
at the time they were struck by the defendant's car state that

they were walking on the dirt path to the right of the macadam, but, assuming that there was evidence tending to show that the plaintiff was walking on the macadamized part of the highway, the question of whether in so doing she was, under the circumstances, guilty of contributory negligence, was clearly a question for the jury to determine. *Cooke* v. *Baltimore Traction Co.,* 80 Md. 558; *Mears* v. *McElfish, supra.*

Without discussing other features of the prayers referred to, we must hold that they were for the reasons stated properly rejected by the court below.

*Judgment affirmed, with costs.*