RODERICK EDWARDS ET AL. *v.* STATE, USE OF MOSES GUY ET AL.

[No. 104, Octobr Term, 1933.]

*Decided January 30th, 1934.*

The cause was argued before PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*George E. Kieffner* and *Ridgely P. Melvin,* with whom were *Thomas M. Jacobs* and *Stewart, Pearre & Kieffner,* on the brief, for the appellants.

*Eugene P. Childs* and *L. Wethered Barroll,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal in this case is from a judgment obtained by the State of Maryland, for the use of the surviving husband and infant children of Mamie Guy, in an action, under article 67, secs. 2-4, of the Code, and section 1, as amended by Acts 1929, ch. 570, sec. 3, brought against Roderick Edwards and Gertrude E. Baldwin for damages resulting from the death of Mamie Guy, alleged to have been sustained by the negligence of the defendants in the operation of an automobile which struck and killed Mamie Guy, a pedestrian crossing the public highway on which the automobile was proceeding. The defendants submitted three prayers at the close of the testimony, which instructed the jury to render a verdict for the defendants on the ground either that no primary negligence of the defendants had been shown, or that the dead woman had been guilty of contributory negligence. The trial court declined to grant any of these prayers, and an exception was taken. A verdict was rendered, and a judgment extended, and this appeal brings forward for review the correctness of the rulings on the prayers.

The testimony tended to show that Gertrude E. Baldwin is the owner of an automobile, and her chauffeur is Roderick Edwards. On the evening of December 30th, 1932, she was returning from Baltimore to Annapolis in her automobile.

A guest, Elizabeth E. Mumford, occupied the back seat with her, and her chauffeur was alone on the front seat driving the automobile. At the time of the accident, the owner was asleep and the guest was awake. The victim of the accident was Mamie Guy, who was in the service of Margaret Golden. Her mistress had taken the servant to Annapolis to do some shopping. The purchases made, they returned in the automobile with the intention of letting the servant out opposite the entrance to a private road, which led to where the servant lived, on the west side of the Annapolis Boulevard, the public highway over which they were traveling. It was then near six o'clock, and a dense fog that was close to the ground made travel extremely dangerous. The mistress drove slowly on the eastern lane of travel northward towards Baltimore, looking to the opposite side for the entrance to the private road, but they passed by it because of the fog, so the automobile was driven a quarter of a mile to a filling station, where the automobile was turned and was driven back on the west lane of travel, but the entrance was again missed in the fog, and, after the automobile had been driven to another good place to turn, it again proceeded on the east side of the highway, moving very slowly, and preceded and followed by an automobile moving in the same direction. The entrance to the road was perceived this third time, the automobile, with its lights lit, was stopped on the right or east side of the road, and the automobile following, which was operated by Mrs. Marie Bayline, also stopped, about six feet back of the Golden automobile. Mrs. Golden let Mamie Guy out from her seat on the right, and the latter, who was dressed in dark clothes, walked back along the east side of the automobile and then turned to her right, and walked straight across the highway until she was in the path of the western lane of south-bound travel, when she was struck on a straight stretch of the highway between two curves by the automobile driven by Roderick Edwards. The woman was thrown to the ground, the automobile passed over her and continued under slowing speed, until it stopped 500 or 600 feet from where the body

lay, and returned. The woman was lying on the shoulder of the road, about twenty-five feet from the entrance of the private road to her home, and her hat was found fifteen feet, in the direction of Baltimore, away from the body. She was unconscious, and was taken to the hospital in Annapolis, where she soon died. Her injuries consisted of two wounds, extending from the rectum to the front, about three and a half inches in length and four and a half inches in depth, which indicated, in the doctor's opinion, that the woman had been struck from behind. The only other mark was a small brush burn on the left knee. According to the chauffeur's testimony, the damage to the automobile indicated that she had been struck by the right-hand corner of the radiator of the sedan, and that the machine passed over what his automobile had hit.

Mrs. Golden did not see the accident. She started her automobile in low gear when Mamie Guy closed the door of the automobile and left. Her automobile was in motion when she suddenly saw the sedan approaching and pass, as she expressed it, at a terrific rate of speed, without her hearing it give any signal. She later stated that she had been driving about seven years and that, in her opinion, the automobile was going over twenty-eight miles an hour. Mrs. Bayline did see the accident, and she is the only one, except Edwards, who did. It happened so quickly, however, that John Gertz, who was on the right front seat by the side of Mrs. Bayline, did not see anything of the accident because he had bent his head to light a cigarette, and in this brief time the tragedy had happened. Mrs. Bayline, however, was following the Golden automobile, and she described Mamie Guy's movements, when it stopped, in leaving Mrs. Golden's automobile, and, quoting the witness, stated that Mamie Guy "walked across the road and when she got near on the other side this car came along, coming so fast I did not see the car until it struck the lady, hit her and threw her far as from here to that bar, and then ran over top of her and then kept on going down the road." "She was near over on her side

where she was to go into her road." She further testified that she heard no signals from the sedan and that "the car was going so fast, that was the reason she did not see it in the fog, and the car came so fast towards her, it was there before anybody knew it."

Roderick Edwards had driven an automobile for Mrs. Baldwin for eight years. He states that the fog was the worst he had ever experienced, getting thicker as he approached the scene of the accident, with the sedan on the west side, as far as he could get, to the right, the headlights burning and casting a light about ten feet wide and so that he could see ten or twelve feet ahead and the sedan moving, in his judgment, at twenty-eight miles an hour, as he had slowed up on account of the thick fog. He testified that he did not see anything until he noticed something between his lights, and that he did not know what it was nor where it had come from, and drove on until he reached a point where he was safe to stop, and then turned back, and learned the automobile had struck Mamie Guy. The owner of the sedan was asleep, and the guest, on the left-hand seat in the back of the automobile, was looking ahead. The fog prevented her from seeing objects on either side of the road, but she saw nothing in the path of the automobile, although she felt the impact of the collision.

These facts present questions which are peculiarly within the province of a jury to answer. Negligence is relative to the particular group of circumstances with reference to which a duty to exercise due care to another arises. In a thick, ground creeping fog of unusual density, that, in combination with nightfall, limits the vision of the driver of an automobile on a slippery road to the light thrown by the lamps of the automobile twelve feet ahead for a width of ten feet, an admitted speed of 28 miles an hour, or 39.7 feet a second, by an automobile on a public highway in the country, without any warning signal of approach, is certainly some evidence to take to the jury on an issue of primary negligence, in view of the fact that the use of the highway by pedestrians

by day and night is bound to be anticipated, as pedestrians have in law an equal right with those in motor vehicles to travel along or to cross the country highway according to their need, convenience, or pleasure. *Mears v. McElfish,* 139 Md. 82, 83, 114 A. 701. To be able to see but twelve feet ahead when traveling, on a slippery road, in a notably dense and impenetrable fog, at the rate of almost forty feet a second, and without any warning signal, is testimony from which primary negligence in the operation of the automobile may reasonably be inferred.

Nor does the record present such prominent, clear, certain, and decisive negligence on the part of the dead woman as to preclude a recovery on the ground of contributory negligence. She was in a position of safety when she walked between the two automobiles on the east side of the highway. Her home, however, was on the west side. It was there she wanted to go, and it was necessary for her to go home to cross the public highway, and she had the present, immediate, right to cross the highway at her pleasure, whether she was going home or not, provided she exercised this right with due care with respect to her own safety and the rights of other users. She had the reciprocal right to expect that any other user of the highway would employ reasonable care and prudence in his enjoyment of the highway, and, so, she was not bound to anticipate that any traveler approaching on the public way, under the then prevailing conditions, would approach at such speed and without warning signal that she could not make the crossing in safety, by looking for the warning of his approach by headlight or by listening for the sound of some warning signal. There is evidence on the record that the sedan was driven at such a rapid speed that, because of the fog, she could not have seen the headlights in time to have warned, while in a position of safety, not to cross. So, any question of contributory negligence was for the jury. *Supra; Hall v. Albertie,* 140 Md. 673, 681, 118 A. 189; *Williams v. State,* 161 Md. 39, 54, 155 A. 339.

*Judgment affirmed, with costs.*