## WHITE v. STATE OF MARYLAND, to Use of ANDERSON (two cases).

## SAME v. ANDERSON (two cases).

### Nos. 4493–4496.

Circuit Court of Appeals, Fourth Circuit.

Aug. 28, 1939.

Clater W. Smith and Walter L. Clark, both of Baltimore, Md., for appellant.

Samuel B. Fortenbaugh, Jr., of Philadelphia, Pa. (Charles C. G. Evans, of Baltimore, Md., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and WYCHE, District Judge.

WYCHE, District Judge.

These four actions arose out of the death of Ellwood Anderson and Sarah, his wife, who were killed by the defendant when his automobile struck them on a Maryland State highway on the night of February 25, 1938. By consent of the parties the causes were tried together.

Two of the actions were brought under Lord Campbell's Act (Art. 67, Sec. 1, etc., of the Maryland Code of Public General Laws) in the name of the State of Maryland, one for the death of Ellwood Anderson to the use of Virginia Joyce Anderson, his infant child, and Ida Kinder Anderson, his mother; the other, for the death of Sarah Anderson, to the use of Virginia Joyce Anderson, her infant child, and Virginia Davidson Hammond, her mother. In the first of these actions there was a verdict and judgment in favor of the infant child in the amount of Five Thousand Dollars ($5,000), but no recovery was allowed the mother; and likewise, in the second named action, there was a verdict and judgment for the infant child for Thirty Five Hundred Dollars ($3,500), but no recovery was allowed the mother. The two remaining actions were brought by the administratrices of the estates of Ellwood and Sarah Anderson to recover funeral expenses, and for pain and suffering, under the provisions of Art. 93, Sec. 106, as amended by the Act of 1937, Chap. 127, Public General Laws of the State of Maryland. There was a judgment for Three Hundred Dollars ($300) in each of these actions.

The District Court denied defendant's motions for directed verdicts made at the close of plaintiffs' evidence and again at the close of all the evidence, as well as defendant's motions to set aside the verdicts and to have judgments entered in accordance with his motions for directed verdicts.

The defendant appeals from the judgments entered against him in each case, and these appeals present the following questions for determination: (1) Was there error in denying defendant's motions for directed verdicts? (2) Did the District Judge err in permitting the witness George F. Galkas to testify regarding distances in which a Ford automobile could be stopped traveling at different rates of speed?

The evidence discloses the facts to be substantially as follows: On the night of their fatal injuries, Mr. and Mrs. Ellwood Anderson, accompanied by two friends, Misses Eliza and Margaret Stack, went to a place called Cozy Cabin Inn to dance. Cozy Cabin Inn is about one mile south of Delmar, and is located on the west side of a Maryland State highway about one hundred feet back from the road upon which the accident occurred. Between the Cozy Cabin Inn and the highway there is a parking place for automobiles of about one hundred feet bordering on the highway and one hundred feet deep. It was customary at this place to reserve a circular driveway between the parked automobiles

so that one could drive in from the north entrance and drive around the circle formed by the lane between the automobiles about fifteen feet wide and drive out again to the highway at a point one hundred feet south of where the car entered. There are two large oak trees in front of the Inn which stand back about five feet from the highway. The oak trees are about sixty feet apart. On each of the oak trees is a floodlight directed toward the Inn, which lights up the Inn and grounds at night. Across the highway on the east side about one hundred feet south of the Cozy Cabin Inn is a place called "Jim's Restaurant" or "Jim's Place".

At midnight, or shortly thereafter, Mr. and Mrs. Anderson left the Cozy Cabin Inn, presumably to go to Jim's Place to get something to eat. They apparently walked down the south lane between the automobiles and came to the highway and shortly thereafter they were overtaken, struck and killed by defendant's automobile some distance south of the southern driveway to the Cozy Cabin Inn.

Mr. Anderson's body was found about one hundred, ten feet south of the southern driveway to the Cozy Cabin Inn, and about eighteen feet in front of where the car stopped; and Mrs. Anderson's body was found about seventy-five feet from the entrance to the southern driveway and eighteen feet behind where the car stopped.

Tire or skid marks on the pavement started opposite the middle of the entrance to the southern driveway and ran south one hundred, nine feet to where the automobile stopped. The defendant was unable to state with any exactness how far south of the southern driveway he struck these people. He never saw them at any time while they were on the dirt shoulder. He was driving on his right side of the road. His headlights were shining brightly and were focused in the shape of a fan. If the decedents had been on the shoulder or on the roadway fifty feet south of the driveway when he was just opposite the middle of Cozy Cabin Inn his headlights could have picked them up. The first thing defendant was conscious of was that the decedents were about ten feet in front of him, or opposite his right fender on the roadway, and they seemed to be actively in motion and so close together that they were touching each other. When the collision occurred Mrs. Anderson fell to the west or right side of the highway and Mr.

Anderson was hurled through the air to the point where his body was found. Defendant testified the radio in the automobile was playing a dance program. The other occupants of the car did not recollect whether or not the radio was playing.

There is nothing to obstruct the view of one approaching the highway from Cozy Cabin Inn either north or south; a step or two before coming on the highway a pedestrian could see the lights of an approaching automobile, whether it was coming from the north or the south.

The defendant estimated that he was traveling forty miles an hour when he approached Cozy Cabin Inn. His brakes were in good condition and there was nothing to obstruct his view.

The defendant was thoroughly familiar with the situation at the Cozy Cabin Inn and was acquainted with the fact that they had a Friday night dance, and knew the risks which were involved in driving down the Delmar road at that time of night on Friday. The weather conditions were good; the road runs north and south; the highway was dry; the road was concrete, eighteen feet wide, level and straight for a distance of one-fourth mile at least on either side north and south from the place where the accident occurred. There was no sidewalk on either side of the roadway south of the southern driveway to the Cozy Cabin Inn. There was a dirt shoulder on both sides of the highway. There was no other automobile on the highway, either going or coming or standing. At the time of the accident the defendant was returning from Philadelphia where he had driven four members of the Girls Basketball team of the Maryland State Teachers College, Salisbury, Maryland, for a game with Temple University. There was no suggestion of impropriety or intoxication on the part of either the decedents or the defendant and his companions.

The first question must be determined by consideration of all the evidence in the light most favorable to the plaintiffs, and in deciding it we must be guided by the law of the State of Maryland.

The Court of Appeals of Maryland has decided: "that an operator of a motor vehicle has no right to assume that the road is clear, but that under virtually all circumstances and at all times, he must be reasonably vigilant and must anticipate and expect the presence of others. One

driving an automobile along a public highway at night is bound to anticipate the presence of pedestrians upon it." Mahan v. State, 172 Md. 373, 383, 191 A. 575, 580; Williams v. State, 161 Md. 39, 155 A. 339. Especially applicable is the foregoing principle of law in rural communities where no sidewalks are provided for travelers. A driver of an automobile should never allow his mind or his eyes to be diverted from the highway upon which he is traveling. Such a diversion for a few seconds may result in misfortune.

As pointed out by the District Judge in overruling the motion to set aside the verdicts, "there was direct testimony of at least two witnesses for the plaintiffs, and tire marks of defendant's automobile on the highway, and the location of the bodies of the decedents after the collision, from which the jury could and probably did find as a fact that the collision had occurred at least fifty or seventy-five feet south of the driveway; and if the jury did so find, then there was other evidence in the case with respect to the width and character of the roadway and the speed of the defendant's car, and the good condition of the headlights thereon from which the jury could have found that the decedents must have been within the defendant's range of vision for a sufficient time, if he had been keeping a proper look-out for pedestrians, to have enabled him to avoid the accident by the exercise of due care." When the defendant first saw the decedents they were on the road ten feet in front of his right fender. He was playing a dance program on the radio. He knew a dance was in progress at Cozy Cabin Inn as he approached it. He testified that he did not know where the decedents came from. If he had been looking down the road he could have seen where they came from. Henry Rogers and William Scott had immediately preceded the decedents from Cozy Cabin Inn to Jim's Place and neither of them had noticed an on-coming car. They had reached a point about twenty feet east of the road on the line with the northern corner of Jim's Place when they heard the noise of applied brakes, and turning saw Mr. Anderson's body in the air.

The defendant estimated his speed to be forty miles per hour. Although the maximum lawful speed along the highway in question, as provided by the Maryland law is forty-five miles per hour, a section of the statute provides: "No person shall operate a motor vehicle of any kind, as defined in this sub-title, over any public highway of the State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of another person * * *." Section 194 of Article 56 of the Annotated Code of Maryland (1935 Supplement). The defendant was well acquainted with the situation surrounding Cozy Cabin Inn and Jim's Place, and knew that it was a place where one should drive cautiously. He was aware that cars as well as pedestrians were likely to emerge from the driveways to the Cozy Cabin Inn on to the highway. He knew of Jim's Restaurant across the highway and probably that the dancers at the Cozy Cabin Inn were likely to go there at that hour of night for solid food. Whether or not under these circumstances forty miles an hour constituted a reasonable and proper rate of speed was a question properly to be passed upon by the jury.

But the defendant earnestly contends that the plaintiffs were guilty of contributory negligence as a matter of law. The burden of proving contributory negligence is on the defendant. Sheriff Motor Co. v. State, 169 Md. 79, 179 A. 508.

Pedestrians have, in general, and in the exercise of care by them, the right to travel anywhere upon a public highway, and one is not negligent as a matter of law in walking on the paved portion thereof, and whether one overtaken and struck by an automobile while so doing is guilty of contributory negligence is a question for the jury under all the circumstances of the particular case. Hall v. Albertie, 140 Md. 673, 118 A. 189; Neidlinger v. Haines, 331 Pa. 529, 200 A. 581. In the case of Sheriff Motor Co. v. State, supra, the Maryland Court, in passing upon the question of contributory negligence, declared [169 Md. 79, 179 A. 511]: "Before the victim of the accident can be judicially declared to have been guilty of contributory negligence, we must give due consideration not only to all inferences of fact tending to support the opposite view, but also to the important presumption that he exercised ordinary care for his own safety. * * * to justify the trial court in withdrawing the case from the consideration of the jury on the ground of contribu-

tory negligence by the plaintiff, the evidence must show some prominent and decisive negligent act on the part of the plaintiff which directly contributed to the accident, and was the proximate cause thereof, and that this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds. * * * 'The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act, relied on to show negligence contributing to an injury sustained, can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law.' "

█ The defendant bases his motions for directed verdicts on this ground on the contention that the decedents were struck at the intersection of the southern driveway to the Cozy Cabin Inn with the highway, and contends that the evidence conclusively shows that they suddenly emerged from this driveway on to the highway immediately in front of defendant's approaching automobile without affording him time to give them warning, or to stop his car before striking them, but, as pointed out by the Trial Judge, the defendant's own testimony resulted in the final statement that he was unable to fix the precise point where the collision occurred with reference to the intersection of the private roadway and the public highway. He thought it was a very few feet south of the intersection but was finally unable to say how far south. There was no testimony in the case to prove conclusively that the decedents were struck at this point, but on the contrary there was ample testimony from which the jury could have found that the decedents were struck after having walked along the highway toward Jim's Place between fifty and seventy-five feet south of the southern driveway to Cozy Cabin Inn. Therefore, it follows that the motions for directed verdicts were properly overruled. Ottenheimer v. Molohan, 146 Md. 175, 126 A. 97; Hall v. Albertie, 140 Md. 673, 680, 118 A. 189; Consolidated Gas, Electric Light & Power Co. of Baltimore v. Rudiger, 151 Md. 226, 134 A. 326; Mears v. McElfish, 139 Md. 81, 114 A. 701; Jones v. Wayman, 169 Md. 670, 675, 182 A. 417.

On the last question, the defendant contends that the witness George F. Galkas was not qualified to express his opinion regarding distances in which a Ford automobile could be stopped traveling at different rates of speed, and that even if the witness's lack of qualification did not appear before he expressed his opinion the cross examination disclosed that he was thoroughly incompetent and the court should have stricken out the testimony when the motion to do so was made at the end of plaintiff's evidence.

Galkas testified that he had served successively as apprentice, mechanic, shop foreman and assistant manager in Ford agencies during a period of twelve years, had made special brake tests on Ford automobiles for the government secret service agents, had attented Polytechnic Institute, and had had much experience in testing brakes on Ford cars, and knew what distance they should run after the brakes had been applied. He testified that a 1937 Ford car traveling on a dry concrete road at a speed of fifty miles an hour, that is, with fair tires, should stop within a distance of seventy-five feet, and going at the rate of sixty miles an hour, should stop within a distance of one hundred feet.

█ It is true that the skillful cross examination of counsel for the defendant had a tendency to weaken the effectiveness of the witness's testimony, but even so, it was for the jury to decide, whether any, and if any, what weight was to be given to his testimony. Qualifications of a witness as an expert must be left largely to the discretion of the Trial Court and its rulings thereon will not be disturbed unless clearly erroneous. 22 C.J. 526; Congress & E. Spring Company v. Edgar, 99 U.S. 645, 25 L.Ed. 487.

█ There was no error in the denial of defendant's motion to strike the testimony of this witness.

For the foregoing reasons the judgment of the District Court must be affirmed.

Affirmed.