## FLOHR, SURVIVING WIDOW, ETC. *v.* COLEMAN

[No. 13, September Term, 1966.]

256

*Decided January 26, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Samuel D. Hill,* with whom were *Buckmaster, White, Mindel & Clarke,* and *Richard E. Zimmerman* on the brief, for appellants.

*James McSherry* and *Frederick J. Bower,* with whom were *McSherry & Burgee* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This is a motor tort action brought by Elsie V. Flohr (Roberts) on behalf of the surviving children of Kenneth M. Flohr, and as administratrix of his estate. She made no personal claim for any damages for herself as surviving widow. The declaration alleged that the death of Kenneth M. Flohr was caused by the negligence of David Lee Coleman, defendant. The case was tried before a jury in the Circuit Court for Frederick County, Judge Robert E. Clapp, Jr., presiding. The questions of the defendant's negligence and the deceased's contributory negligence were submitted to the jury, which found a verdict in favor of the defendant.

On appeal from the judgment on the verdict, the appellants contend that the court's instructions to the jury were insufficient to fairly submit the case to the jury as to certain issues and that the court erred in sustaining objections to questions asked the defendant by the Flohrs' attorney concerning the defendant's knowledge of laws pertaining to a driver's duty to keep a lookout and to have headlights which show certain distances. On December 31, 1964, at approximately 9:15 p.m., Kenneth M. Flohr was struck and killed while walking north on the east side of State Route 75 by an automobile owned and operated by the defendant. Neither the defendant nor Flohr had been drinking. The accident occurred approximately three-tenths of a mile north of the intersection of Clemsonville Road and Route 75 in Frederick County. Route 75, at the point where the accident occurred, was straight and level and ran through open farm country. It was not artificially illuminated and was twenty-one feet in width, excluding the earth shoulders. The

roadway was comprised of an eighteen foot concrete strip with one and one-half foot asphalt shoulders on each side. The earth shoulders on either side of the roadway were three feet, eight inches wide. There were no sidewalks. Defendant admitted that he had used the road often and that he knew pedestrians walked on or along the side of the road.

Defendant, Coleman, was traveling north on Route 75 at a rate of speed from between thirty-five to forty-five miles per hour, when an automobile traveling in the opposite direction on Route 75 passed the defendant with its headlights on high beam. Coleman testified that he slowed his vehicle and pulled to the right. He stated that the bright lights of the oncoming vehicle temporarily blinded him. Just after the southbound car passed, defendant's companion, Arthur Greenholtz, Jr., who was riding on the front seat beside him, cried out "There's a man," but before he finished that statement, defendant heard a "thump." Neither had seen Flohr prior to the accident. Coleman immediately turned his vehicle sharply to the left and applied his brakes.

At the time of the accident, Flohr was dressed in black trousers and a black pull-over sweater which had a white stripe on the front. A witness for the appellants, Harold D. Kline, testified that he had seen Flohr walking on the traveled portion of the highway some time before the accident. Kline had traveled in a southerly direction, facing Flohr. The white stripe on the front of Flohr's sweater was visible to Kline. It was not shown that the stripe was visible to someone approaching Flohr from the rear.

There was controversy over whether or not Coleman drove off the hard surface of the road and whether or not Flohr was walking on the asphalt extension or on the dirt shoulder. The investigating police officer found a skid mark from the right tire of the Coleman vehicle. The skid mark began eight inches from the east edge of the hard surface of the highway, twenty-five feet north of where the officer placed the approximate point of impact. The officer placed the point of impact on the east asphalt extension. In a statement to the police, Arthur Greenholtz, Jr., defendant's companion, stated that when the approaching vehicle refused to dim its lights, defendant "went

to the side of the road," and that when the approaching car passed, defendant "went back on the road." In his testimony, Greenholtz stated that defendant's vehicle "stayed on the edge" of the paved road and that Flohr was on the paved portion.

Appellants objected to the failure of the trial court to include in its instructions these portions of the following instructions requested by their trial counsel:

> "2. * * * It is the duty of the pedestrian to use reasonable care in walking on a street, and to act as an ordinarily careful person would act under similar circumstances. But the driver of a motor vehicle is required to exercise much greater vigilance and caution to look out for the pedestrian than the pedestrian is required to exercise to look out for the driver. This is because of the fact that the pedestrian cannot usually harm the motorist by the way he uses the street and needs to look only after his own safety, whereas the motorist may kill or seriously injure the pedestrian and therefore should look out for the safety of the pedestrian as well as his own. * * *
>
> "3. Pedestrians walking along public highways outside of towns and cities where there are no sidewalks ordinarily use the sides of the road and vehicles the middle. Therefore, pedestrians must expect to find and watch for the approach of vehicles in the middle of the road. Drivers must expect to find and be alert for pedestrians walking along or on the sides of the road. * * *"

The trial court refused to include these requested instructions in its instructions to the jury because it felt that to do so would overemphasize and change the degree of care required of a pedestrian and of a motorist, and it felt that the requested instruction—pedestrians must expect to find and watch for the approach of vehicles in the middle of the road and drivers must expect to find and be alert for pedestrians walking along the road—was erroneous, because it thought that a pedestrian has no greater legal right to travel on a particular portion of a country road than does the driver of a vehicle.

The court instructed the jury as to the burden of proof imposed on the appellants in proving negligence. It defined negligence "as either doing something that a reasonably prudent man would not have done under the circumstances as you find them from the evidence, or failing to do something that a reasonably prudent man would have done under the circumstances that you have outlined in the evidence." The court then defined proximate cause. In its instruction on the motorist's duty in cases of this nature, the court told the jury of the duty of a motorist to slow down when blinded by approaching lights in order to avoid striking something that may be within the blind area. The court also defined and explained contributory negligence.

As to the various rights of persons using the highway, the court stated:

> "Now I advise you also that there is no law in this State that requires a person to walk to the left facing traffic, that is, there is no provision of the Motor Vehicle law of the State that requires a person to do that. Where Mr. Flohr was walking and the circumstances under which he was walking is entirely a question of this due care that I have advised you about, because pedestrians and motor vehicles have an equal right on the public highways of the State and each must use due care under the circumstances to avoid any possible accident that may or may not develop, so that in the judgment of this case it boils down to a question of due care under all of the circumstances of the case as you may find them."

After counsel for both sides were afforded an opportunity to challenge the given instructions, the court gave additional instructions on the rights of users of the highway:

> "I stated to you also that each person, the driver of an automobile and a pedestrian, has equal rights to use the highways of the State. That is particularly true, of course, where there are no sidewalks, and each has an equal duty to look out for the other. In other words, a pedestrian is under duty to look out

for automobiles on the road, and automobiles by the same token are under a duty to look for pedestrians on the road, and all of these items are to be considered by you in connection with the consideration of due care and negligence and contributory negligence that I discussed with you previously."

The text of the appellants' requested instructions followed closely the language in the opinions of this Court in *Wiggins v. State, Use of Collins,* 232 Md. 228, 192 A. 2d 515; *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127; *Fotterall v. Hilleary,* 178 Md. 335, 13 A. 2d 358; and *Holler v. Lowery,* 175 Md. 149, 200 Atl. 353. Each of these cases involve a discussion of the care required in the operation of a motor vehicle as compared to the care required of a pedestrian. There is no doubt that the abstract statements of law contained in the requested instructions are good law; but none of the above cases relied on by the appellants involve the granting or refusal of such instructions as those sought here. The reasoning of courts in opinions is not addressed to juries and is not always adapted to use in instructions to them. *Neas v. Bohlen,* 174 Md. 696, 199 Atl. 852. Cf. *Garfinkle v. Birnios,* 232 Md. 402, 404, 194 A. 2d 91.

The court below correctly stated the rights of motor vehicular and pedestrian users of the highways, and it properly refused the above requested instructions. Its instruction generally followed those in previous cases which stated that in the absence of special circumstances or statutes, pedestrians using public highways, which are located outside of towns and cities, have a duty to watch for and expect to find approaching vehicular traffic thereon, and operators of motor vehicles have a corresponding duty to watch for and expect to find pedestrians walking on or off the sides of the highways. *Critzer v. Shegogue,* 236 Md. 411, 204 A. 2d 180; *Dunn v. Eitel,* 231 Md. 186, 189 A. 2d 356; *Hall v. Albertie,* 140 Md. 673, 118 Atl. 189.

In *Critzer v. Shegogue, supra,* the appellants contended that the court's instructions, which stated the reciprocal duties of pedestrian and vehicular users of the highway, and the duty of a driver of a motor vehicle to expect to find and to be alert to discover pedestrians (The pertinent instructions are set out in

full in Joint Record Extract, pp. E. 98-99, *Critzer v. Shegogue, supra.*), placed a greater duty with respect to the use of the highway on the part of a motorist to a pedestrian than the law imposes. This Court rejected this contention and held that the court's instructions did not conflict with the general rule.

In another case a requested instruction, which stated that because of the nature of an automobile and the difference in the consequences of a breach of the duty owed by a motorist and a pedestrian respectively, ordinary care requires a motorist to exercise a higher degree of diligence to avoid a collision with a pedestrian than it would require of a pedestrian under similar circumstances (The instruction is set out in Appellant's Brief and Appendix, p. 32, *Dunn v. Eitel, supra.*), was rejected by the lower court, which was affirmed by this Court in a per curiam opinion. *Dunn v. Eitel, supra.* In *Dunn,* appellant argued that the trial court failed to instruct the jury fully on the question of ordinary care. See *Lemons v. Chicken Processors,* 223 Md. 362, 164 A. 2d 703; where this Court found that an owner-operator of a passenger car was not entitled to a specific instruction to the jury based upon the great size and weight of a tractor trailer and its lesser maneuverability.

In their brief, appellants suggest that they do not contend that the operator of a motor vehicle owed greater than ordinary care, but that ordinary care under the circumstances required greater vigilance and lookout of the driver than of the pedestrian. It is true that the driver of an automobile is obliged to anticipate that pedestrians may be using the public roads, and it is especially incumbent upon him to exercise reasonable care to avoid injury to pedestrians. *Hall v. Albertie, supra,* citing *Mears v. McElfish,* 139 Md. 81, 83, 114 Atl. 701. However, appellants were asking the court to instruct the jury that a greater amount of reasonable care was required of the defendant, and this would have been an inaccurate statement of the law and misleading to the jury. It is not the law that the driver or operator of the automobile is required to use something in the way of care over and above reasonable care under the circumstances. *Rangel v. Badolato,* 284 P. 2d 138 (Cal. App. 1955). Cf. *Kaffl v. Moran,* 233 Md. 473, 197 A. 2d 240. The rejected instruction in *Rangel* stated that both plaintiff-pedes-

trian and defendant-motorist were charged with ordinary care, but a greater amount of such care was required of defendant at the time because he was driving an automobile. The required standard of care on the part of the operators of motor vehicles is ordinary care under the existing circumstances. The actions or precautions required to be taken to comply with this standard may vary under different circumstances, but the standard remains the same. *Kaffl v. Moran, Lemons v. Chicken Processors,* both *supra.*

The requested instruction overemphasized the required standard of care owed by a motorist. As stated by former Chief Judge Brune in *Lemons,* 223 Md. at 369:

> "If the trial court had undertaken to discuss the facts in detail in the charge to the jury, we may assume that an instruction along the lines requested, not overemphasizing any one factor or carrying the implication of any higher degree of care being required, would have been proper and, indeed, should have been given. But in the instant case, the trial judge did not give a charge reviewing the facts in detail, and we do not think that he was bound to do so. Sometimes a charge embodying a particular rule of law may be necessary in order to prevent an abstract, general charge which is granted, and which may in itself be a correct charge, from being misleading. *State, Use of Taylor v. Barlly,* 216 Md. 94, 99, 140 A. 2d 173. In the present case, however, we find no such situation. The type of charge to be given—whether detailed or general—was within the discretion of the trial judge, and he was not required to include the requested instruction in it. *Ager v. Baltimore Transit Co.,* [213 Md. 414, 132 A. 2d 469]."

Appellants contend that "a driver does not have to be as vigilant for pedestrians walking in the middle of the road, where not expected, as for those walking along the edge, where they are to be expected. Likewise, pedestrians need not be as vigilant for autos along the edge of the road, where not expected, * * *."

The public roads are for the general use of all members of the public, and the rights of one operating a vehicle and of a pedestrian on a public highway are mutual, reciprocal, and equal. Neither may use it in disregard of the right of the other to use it. Each must accommodate his movements to the other's lawful use of it, and each must anticipate the other's possible presence. *Mahan v. State,* 172 Md. 373, 191 Atl. 575. Pedestrians have an equal right with those in motor vehicles to use a country highway according to their need, convenience, or pleasure. *Edwards v. State,* 166 Md. 217, 170 Atl. 761. The public highway includes not only the paved portion of the highway but the shoulder. Code (1957), Article 66½, Section 2 (a) (58).

In the absence of any statute, ordinance, or special circumstances, a pedestrian has, in the exercise of due care for his own safety under the conditions existing on the highway, the right to travel anywhere upon a public highway; and he is not negligent as a matter of law in walking on the paved portion, instead of the shoulder. *White v. State of Maryland,* 106 F. 2d 392 (4th Cir. 1939); *Hall v. Albertie, Mears v. McElfish,* both *supra.* The pedestrian is not under a legal duty to look back or watch behind to see if he is in danger of being struck or run down by any vehicle approaching him from the rear, *Rangel v. Badolato, supra,* although he must anticipate vehicles on the highway and have due regard for their rights to use it and for his own safety. *Critzer v. Shegogue, supra;* 4 Blashfield, *Automobile Law and Practice,* Section 143.5 (1965). The pedestrian may assume that the driver will use ordinary care for his protection, and the driver may assume that the pedestrian will exercise ordinary care for his own safety. 3 Blashfield, *supra,* Section 141.11 (1965).

A motorist has the right to use the highway, and he must use reasonable care to observe conditions along the side of a highway, although his primary attention should be directed to the road in front. *Mumford v. United States,* 150 F. Supp. 63 (D. Md. 1957). It is especially incumbent upon him to exercise reasonable care to avoid injury to pedestrians who, out of regard for their own safety, would naturally make use of the unpaved margin. *Hall v. Albertie, supra.* To instruct that a

driver on a country road, which pedestrians have the right, subject to the exercise of due care, to use in its entirety, does not have the duty to be as vigilant for pedestrians walking in the middle as for those walking along side would mislead the jury to believe that the driver's duty of full attention and due care to look out for pedestrians on the highway was less if the driver was traveling in the middle portion of the highway. Drivers of motor vehicles must exercise due care and caution and must anticipate pedestrians on the highway regardless of the part of the highway on which pedestrians may be. *Williams v. State,* 161 Md. 39, 155 Atl. 339.

Appellants allege error in the failure of the trial court to give requested instruction No. 4 which covered the requirements that a motorist constantly observe the highway ahead at night to discover persons lawfully using the road and that he keep his automobile under such control as to be able to readily turn or stop it to avoid colliding with such persons.

There is no obligation that the trial court point out any and all of the reciprocal duties and obligations of the respective parties in minute detail, provided the subject is fully and comprehensively covered in the charge to the jury. *Lemons v. Chicken Processors, Ager v. Baltimore Transit Co.,* both *supra.* Judge Clapp defined and explained the necessary components of negligence and contributory negligence. He pointed out the particular duty of a driver, blinded by the lights of an approaching vehicle, to slow down to avoid hitting a pedestrian who might be on the highway, and the general duties and rights of motorists and pedestrians under the circumstances. We think the instructions given by the trial judge did adequately inform the jury concerning the duties of the defendant, and that it was discretionary with him as to whether or not each detailed obligation should be mentioned in the charge.

The sustaining of objections to certain questions propounded to the defendant by Flohrs' counsel and the refusal of the trial court to instruct the jury that the law requires automobile headlights on high beam to be of sufficient intensity to reveal persons or vehicles on the road at least 350 feet ahead, Code (1957), Article 66½, Section 281, are alleged to be prejudicially erroneous. The court sustained the objections to the ques-

tions on the ground that counsel for the Flohrs could not ask the defendant any questions of law.

The questions involved are:

"You know the law requires you to keep a lookout for pedestrians walking on or along the side of the road, don't you?

"You knew the law required your headlights to show on high beam at least 350 feet ahead and 100 feet ahead on low beam?"

A motorist is presumed to know the law regulating the use of motor vehicles. That is, ignorance of that law will not relieve him from the legal consequences of a wrongful act. Since a motorist's acts and omissions have such legal effect as the law prescribes regardless of his knowledge or ignorance, the questions concerning defendant's knowledge of his legal duties to look out for pedestrians and to have headlights of sufficient illumination were immaterial. 31A C.J.S., *Evidence,* Section 132 (2), page 259. The material issue in controversy was whether defendant fulfilled his duties under the circumstances, not whether he knew them.

There was no evidence to prove that defendant's headlights did not illuminate the road ahead for the required distance. Defendant testified on cross-examination that he could see far enough ahead to observe where he was going, but that he did not see Flohr. He was not asked if both headlights were operating properly prior to the accident, or how far ahead they illuminated in terms of feet or any other measured distance. The police officer, who investigated the scene shortly after the accident, testified that he found that the right headlight of defendant's car was broken out (Flohr was struck by the right front of the vehicle), but that he found no broken glass from that light at the scene of the accident. The officer also found that the left headlight was lighted and that it was on high beam. He was not asked if the left headlight illuminated the required distance.

Appellants had the burden of proving that defendant's headlights did not meet the statutory requirements. *Ebling v. Nielsen,* 109 Wash. 355, 186 P. 887 (1920); 9B Blashfield, *Cyclo-*

268

*pedia of Automobile Law and Practice,* Section 6070, page 616 (1954). A party who has the burden of proving another party guilty of negligence does not meet this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that the other party has been guilty of negligence. *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549. In the absence of other evidence, it would be a mere conjecture to surmise that because glass from the broken headlight was not found at the scene of the accident, the headlight was broken out some time prior thereto. Cf. *Glazier v. Tetrault,* 148 Me. 127, 90 A. 2d 809; 10 Blashfield, *supra,* Section 6564 (1954). Since the record discloses no evidence to permit an inference of any violation of the motor vehicle law with respect to headlights, there was no basis for an instruction relating to the illumination requirements of headlights, and the trial judge, in the exercise of his discretion, was not prejudicially in error in rejecting the requested instruction. Compare *Victor Lynn Lines, Inc. v. State,* 199 Md. 468, 87 A. 2d 165, and *Nelson v. Seiler,* 154 Md. 63, 139 Atl. 564.

We find that the instructions given were adequate and that there was no prejudicial error in the court's refusal to instruct the jury as requested by the appellants, or in the sustaining of objections to the two questions concerning defendant's knowledge of the law.

> *Judgment affirmed, appellants to pay the costs.*