[Civ. No. 8870. Second Appellate District, Division One.—March 5, 1935.]

JOHN E. THOMPSON, as Administrator, etc., Respondent, v. M. K. & T. OIL COMPANY (a Corporation), Appellant.

Blackstock & Rogers and Merle J. Rogers for Appellant.

James C. Hollingsworth and Don R. Holt for Respondent.

EDMONDS, J., *pro tem.* — William R. Thompson had judgment against the defendant upon the verdict of a jury. He subsequently died, and his administrator has been substituted as plaintiff. The defendant's principal contention on appeal is that the evidence is insufficient to sustain the

verdict. Error is also predicated upon instructions given and refused.

The case arose out of the drilling of an oil well on property near Ventura leased by the defendant. The lease required a well to be started before November 1, 1929. Prior to October 27, 1929, the defendant, whose business was the development and production of oil, had employed Thompson at a salary of $300 per month to supervise the building of a road to the property and the installation of drilling machinery. During the progress of this work Thompson was endeavoring to secure a contract with the defendant to drill the well. Negotiations had proceeded to the point of preparing a written contract which had been signed by Thompson and the company, but had not been delivered because Thompson could not procure the bond required by its terms.

This was the situation the latter part of October. The defendant's lease provided that it must spud in a well before November 1st. Nothing definite had been accomplished toward drilling other than to have the machinery on the ground. A few days before October 27th the secretary of the defendant corporation sent each director a telegram requesting him to come to the company's office at Ventura for a meeting on that day. Every director was present when the meeting or conference convened. Whether this was a legal meeting of the directors or a conference of individuals is a matter of dispute. However, there was considerable discussion of ways and means to drill the well, Thompson being present for a part of the time. The directors went over the situation with him at length, and this suit is upon an oral contract alleged to have been made at that time.

The testimony of Thompson and six of the seven directors of the company as to what occurred that day is in direct conflict. According to Thompson he told them that he would drill the well for $10 a foot including labor and casing, the company to furnish everything else; that he had no capital, and that they must advance the money for labor and material, with $4 per foot to be held back until the well was completed; that he was also to have a drawing account of $300 per month, and to be paid a bonus of $1,000 in the event that the contract was terminated before a depth of 4,000 feet had been reached. Thereupon, Thompson testified, the president said to him, "Well you go back on that

mountain and go to work and get that well started before the time expires, on the terms that you will get $10 a foot for your contract and you are to pay the labor and the casing. We will furnish everything else.'' Thompson further testified that three of the other directors expressly assented to this, and that the president also said, ''We want you to go up and start this well, and we are now going to authorize Judge Brady to draw this up in writing and have it signed.'' This was substantially corroborated by one of the then directors, although the others testified that this director was not present at the time Thompson conferred with them.

Each one of the other six directors positively denied that any contract other than that Thompson was to continue working for the company was agreed upon. They testified that Thompson was told to get the well spudded in and superintend the drilling of it, and several said it was expressly stated that he was to continue at the same salary of $300 per month. All six stated that at the meeting every director had expressed the opinion that no drilling contract at a stated rate per foot would be entered into unless a satisfactory bond was given.

No vote was taken by the directors, no minutes of the meeting were written up by the secretary and no written contract embodying any agreement made on October 27th was prepared. Thompson immediately started work drilling the well, and continued for twenty-one days at which time the defendant ordered drilling stopped. During this time Thompson hired and discharged men, ordered casing and approved bills for material. The defendant paid these bills and also all of the payrolls. Thompson did not pay out any money at any time, either for labor, casing or any other expense connected with drilling operations on the lease. He estimated that the defendant corporation paid out $4,425 during this time. Also, three days after drilling was stopped Thompson was given a check for $300 on which the following appears: ''This check is issued in payment of items as per statement following. The endorsement of payee on back will constitute a receipt in full. For Labor in Full to Date Oct. 31.'' Thompson indorsed the check and received the money thereon, although he testified he said at the time it was given to him: ''This does not apply to my contract; it is only for my drawing allowance.''

Drilling was stopped at a depth of 1465 feet and the first cause of action is on the alleged contract for drilling the well at the rate of $10 per foot, less the $300 paid. A second cause of action is under the common count for the same amount, as the reasonable value of the services alleged to have been rendered. The verdict of the jury was for $10,834.50, $1,000 of which was remitted by the plaintiff on motion for a new trial.

█ Appellant asserts that the evidence is insufficient to sustain the verdict, upon the ground that there is a variance between the terms of the contract alleged in the complaint and as testified to by plaintiff. No objection was made in the trial court to the admission of evidence upon this ground, nor was any motion for nonsuit presented. █ "It is well settled that if a defendant desires to take advantage of a variance, it must be done either by objecting to the admission of the testimony or by motion for a nonsuit, and when such action has not been taken in the trial court, the objection is deemed waived and cannot be raised for the first time on appeal." (*Cousin* v. *Mason*, 78 Cal. App. 111, 113 [248 Pac. 299].) █ Also, no variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice. (See Civ. Code, sec. 469.) No prejudice has been either claimed or shown.

█ Defendant cannot claim that the contract is too indefinite and uncertain to constitute a contract. The parties acted upon it and, so far as the record shows, no question arose during the entire drilling operations concerning the rights or duties of either. Thompson supervised the drilling and the defendant paid the bills. It has not claimed that any expense was incorrectly incurred by Thompson or paid by it, nor that the well was not properly drilled.

█ Appellant urges that two instructions given to the jury are conflicting and erroneous. It was instructed that plaintiff had the burden of proving "that the agreement pleaded in the complaint was entered into by plaintiff and defendant, by and with the consent of both parties; and . . . that plaintiff did each and every act in said agreement provided on his part to be done". The jury was also instructed that "if you believe, by a preponderance of the evidence, that plaintiff and defendant entered into a contract whereby defendant agreed to pay plaintiff ten ($10.00) dol-

o

lars a foot for every foot of well drilled by plaintiff'' with a bonus of $1,000 if the contract was terminated at less than 4,000 feet, and that if plaintiff substantially complied with his contract, and was prevented from completely fulfilling it by the defendant, they should find for plaintiff. It is true that the first instruction refers to an agreement as pleaded in the complaint, and that the second authorized a verdict for the plaintiff if the jury found that a contract was entered into as shown by the evidence in the case. But in view of the fact that no objection was made at the trial to the variance between the pleading and the evidence, and the case was tried on the assumed issue as to whether or not a contract to drill the well for $10 a foot had been entered into between the parties, the jury could not have been misled. The defendant never admitted that it entered into a contract with Thompson for drilling the well on a footage basis. It at all times denied that he did any work for the corporation other than as an employee at a salary of $300 per month. Under these circumstances any such conflict in the instructions could not have prejudiced the defendant.

The defendant particularly criticises what is termed a formula instruction, principally upon the ground that it does not contain all of the elements necessary for such a charge to a jury. The jury was told that ''if you believe from the testimony that a contract existed between the plaintiff and defendant, as contended by plaintiff, and that plaintiff was entitled to a bonus or additional sum in the amount of $1,000 in event the same was terminated by defendant after plaintiff had drilled the hole in question to a depth of 1456 feet, and if you further believe that plaintiff performed all of the terms and conditions of said contract on his part to be performed and that there was expended by defendant under the terms of said contract, the sum of $4,725.50, and that there was no accord and satisfaction between said parties, then in that event the said sum of $4,725.50 should be deducted by you from the total contract price of $10.00 per foot for the drilling of said 1456 feet of hole, together with said additional sum of $1,000.00, and your verdict should then be in favor of the plaintiff for the difference between $4,725.50 and $15,560.00, to-wit, in the amount of $10,834.40.'' It may be noted that the verdict was for the exact amount stated in this instruction.

Conceding this to be a formula instruction, it was erroneous to the extent that it included as an item of damage the sum of $1,000, shown by plaintiff's evidence to have been part of the contract, but not pleaded in the complaint, and failed to mention the sum of $300 which the plaintiff admitted having received on account. As $1,000 was remitted by plaintiff after judgment the defendant has suffered no prejudice by mention of that item in the instruction. Three hundred dollars should have been allowed as a credit to the defendant, and the trial court will be directed to reduce the judgment by that amount. If the jury believed that any contract had been made as shown by the plaintiff's evidence he was entitled to payment for 1456 feet of well at $10 per foot less $4,725.50 expended by the defendant and $300 paid to the plaintiff. Before defendant can successfully challenge a misleading instruction it must show the evidence to be such that upon a proper instruction there might have been a verdict in its favor. (*Hamlin* v. *Pacific Electric Ry. Co.*, 150 Cal. 776 [89 Pac. 1109].) It has not done so here.

The jury was instructed: "If you believe from the testimony in this case that a contract existed between the plaintiff and defendant as contended by plaintiff, then it becomes immaterial whether or not the meeting of the officers and directors, or any of them, on October 27, 1929, was a special meeting, regular meeting, *ex-officio* meeting or a so-called gathering." If a contract was in fact made, the kind of a meeting by which it was authorized is immaterial. If all of the directors of a corporation are present when the terms of a transaction are agreed to, the corporation cannot deny the contract upon the ground that it was not made at a legal meeting. In the case of *Scott* v. *Superior Sunset Oil Co.*, 144 Cal. 140, 143 [77 Pac. 817], it was said: "A majority of defendant's board of directors, including both Crosland, who was its secretary and treasurer, and the vice-president, actively participated in employing plaintiff and counseling with him concerning the care and treatment of the patient. And all this was done avowedly on behalf of defendant. This was sufficient to charge the corporation. It was not necessary that the employment should be made or ratified by action of the board at a regular meeting. The separate assent of a majority of the board was all that ought to be required under the circumstances presented by the

evidence." The same conclusion was reached in *Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376, 387 [89 Pac. 86, 87], where the court said: "The majority of the board having knowledge of the facts, it was not necessary, to conclude the company defendant in. favor of plaintiff, that his employment should be ratified at a regular meeting of the board. It was sufficient that the majority of the board individually were advised of ·the terms of the employment of plaintiff by Mr. Doe, and took no measures to disaffirm as directors that employment."

The jury was also instructed: "You are instructed that in determining whether or not a contract in fact existed between the plaintiff and defendant in this case that it is immaterial whether or not the minutes of the meeting of the board of directors at which said contract is alleged to have been entered into was reduced to writing and entered in the minute book of the corporation."

The contract, if made, could not have been avoided by the corporation by its failure to write up any minutes of the meeting at which it was agreed upon. One contracting with a corporation is not required to ascertain that the corporate minutes show the transaction. "If a corporation allows its officers to conduct its business and third persons act upon the apparent authority thus shown, it cannot defeat the rights of such persons arising from transactions done and completed under such ostensible authority by failing to enter upon its minutes any order giving its officers authority to act." (*Fowler Gas Co.* v. *First Nat. Bank*, 180 Cal. 471, 477 [181 Pac. 663, 666].) By this instruction the jury was only told that if the contract was made by Thompson and the board of directors of the corporation, it was immaterial whether or not the minutes showed the transaction.

None of the other instructions complained of present anything approaching reversible error, and the substance of the one refused was sufficiently covered by other instructions given. The following statement from *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390, 396 [264 Pac. 237], applies to the instructions in this case. "Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed. We will not assume that they may not have understood the charge as we understood it. The instruc-

tions must be considered in their entirety, and if, as so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable, even though by selecting isolated passages from single instructions they may in some respects be amenable to just criticism."

Appellant makes the further point that the evidence is insufficient to support a judgment on the second cause of action. Even if this were true, it is ample for a verdict and judgment on the first. The case presents one of the usual situations of sharply conflicting evidence upon which a jury might have found for either of the parties. Under such circumstances an appellate court cannot disturb the verdict.

The trial court is directed to reduce the judgment by deducting therefrom the sum of $300, with corresponding deduction of interest, and as so reduced the judgment is affirmed, respondent to recover costs on appeal.

Conrey, P. J., and Houser, J., concurred.