[Civ. No. 8493. Third Dist. May 25, 1955.]

HILBERT RANGEL, a Minor, etc., Appellant, v. JOSEPH
G. BADOLATO et al., Respondents.

Sutter, Elledge & Carter for Appellant.

Keith, Creede & Sedgwick and Geary, Spridgen & Moskowitz for Respondents.

FINLEY, J. pro tem.*—This appeal is from a judgment entered upon the verdict of a jury in favor of defendants.

*Assigned by Chairman of Judicial Council.

Plaintiff and appellant, a 19-year-old pedestrian, commenced this action through a guardian *ad litem* seeking damages for personal injuries suffered when struck by a delivery truck owned by defendant Oakland California Towel Company, a corporation, and driven by defendant Joseph Badolato. There were other defendants named, but as to them the action was dismissed.

The accident happened about 7 p. m. on October 5, 1951, when plaintiff, a sailor on a weekend pass from the Naval Net Depot at Tiburon, California, was walking with a friend down San Quentin Road in Marin County on his way to the Richmond-San Rafael Ferry. Both, dressed in the Navy uniform of dark blue with white caps, were walking on the right-hand side of the road expecting to catch a ride. At the same time defendant Badolato was also proceeding toward the ferry on the same road driving a truck belonging to defendant Oakland California Towel Company, when the right front fender of the truck collided with plaintiff.

At the point of collision, San Quentin Road is a two-lane road with asphalt surface 21 feet in width and having oiled shoulders 3 feet in width and outer gravel shoulders 5 feet wide.

The night was dark and clear. Plaintiff testified that he neither heard nor saw the truck prior to being hit. In a deposition taken prior to the trial, defendant Badolato stated that the first he saw of plaintiff was at the moment of impact when he saw the white cap. At the trial he testified that all he saw was plaintiff's white cap at the moment of impact, but he also testified that he saw the two sailors when he was about 15 or 20 feet away. Badolato further stated that he was traveling between 40 and 45 miles per hour, his lights were on ''low beam,'' and his vision was in no way obscured, although an oncoming car was driving with its ''high beam'' lights on. He testified that as soon as he saw plaintiff he applied the brakes, swerved to the left, and his truck then swung back and forth across the highway, coming to rest in a ditch on the right-hand side of the road about 230 feet from the point of impact.

There is some question as to where plaintiff was when struck. Badolato testified by way of deposition that plaintiff and his companion were ''not on the highway, they were on the shoulder . . . or near the shoulder,'' but further that they couldn't have been on the shoulder but were on the paved portion of the highway. At the trial he testified that plaintiff

was on the paved portion of the road when struck. Plaintiff and his companion testified that plaintiff was on the gravel shoulder of the road. Two witnesses for defendant stated that plaintiff was on the paved portion of the road.

Upon these facts the defendants raised issues of contributory negligence and unavoidable accident. The jury returned a verdict for the defendants. After judgment on the verdict, plaintiff moved for a new trial, which motion was denied.

On appeal the only assignment of error is the giving of certain instructions and the refusal to give others.

Appellant first contends that it was error for the trial court to have refused to give the following instruction requested by plaintiff:

"You are instructed that the plaintiff and defendant were both chargeable only with the exercise of ordinary care, but a greater amount of *such* care was required of the defendant at the time of the accident in question by reason of the fact that he was driving and operating an automobile, which is an instrumentality capable of inflicting serious and often fatal injuries upon others using the highway." (Emphasis added.)

Appellant's position is that said instruction states a rule of law applicable to the issues and evidence in the case, that the jury was not otherwise properly instructed with reference to the relative "amounts" of caution required of the driver of a motor vehicle and a pedestrian. It is argued that it was prejudicial error to refuse to so instruct, since there might have been a plaintiff's verdict upon the facts but that the jury was precluded from considering the facts in the light of this aspect of the law and was misled by the giving of the following instruction:

"It is the duty of every person using a public highway, whether a pedestrian or the driver or operator of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision."

Respondents in answer contend that the refused instruction is unnecessary, archaic and misleading, and would have served only to confuse the jury, particularly in view of the fact that it was carefully instructed as to the definition of negligence in accordance with the standard of the reasonably prudent man and instructed as to the duty of the defendant driver to keep a vigilant lookout ahead. As to the instruction last above quoted, which was given by the court, respondents also

point out that appellant submitted the identical instruction.

The most recent pronouncement of our Supreme Court on the question here involved appears in *Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71 [265 P.2d 513]. The court, at page 80, after citing a long list of cases wherein instructions similar in language to the one here involved were approved, had this to say:

"It is apparent that the intent of the instructions approved in the cited cases was to inform the jury that the elements of action constituting conduct which qualifies as ordinary care are those commensurable with the responsibility involved and depend upon the character of the instrumentality being used or the nature of the act which is being performed, all as related to the surrounding circumstances. If the particular instruction here requested by plaintiffs (No. 201-E) had consisted of only the first sentence thereof, which contains the expression, 'amount of caution,' it perhaps would have been confusing to a jury. With the added explanation, however, set forth in the instruction, of the meaning of the quoted expression as related to the respective duties of driver and of pedestrian the instruction as a whole correctly states the law and explains that what is meant by varying amounts of caution is that the elements of conduct entering into ordinary care or caution will vary and must be related to the particular circumstances involved, including the character of the act being performed."

Among the cases to which the court was referring in the language just quoted is *Dawson* v. *Lalanne*, 22 Cal.App.2d 314 [70 P.2d 1002]. In that case plaintiff, a pedestrian, was struck by an automobile driven by defendant. A judgment entered upon the jury's verdict in favor of defendant was reversed on the ground that the court refused to give the same instruction as that quoted above, which is the instruction refused by the court here. In the Dawson case, however, the court, at page 315, in reasoning upon the question of the trial court's refusal to give the instruction, made this observation:

". . . The error in failing to give the instruction becomes more apparent when it is considered that the court gave at the request of the defendant the following instruction: 'No higher or greater *degree* of care was required of the defendant to avoid the accident than was required of the plaintiff. Each was required to exercise ordinary care under the conditions confronting him.' The refused instruction was not covered

in any of the instructions given by the court.'' (Emphasis added.)

It does not seem that the reasoning in *Dawson* v. *Lalanne, supra,* concerning these instructions, is entirely accurate. Under the rule announced in *Lasater* v. *Oakland Scavenger Co.,* 71 Cal.App.2d 217 [162 P.2d 486], the last instruction hereinabove quoted from the Dawson case and disapproved there appears to be a correct statement of the law. A careful analysis of the instruction approved in the Dawson case, which is the identical one refused by the trial court in this case, and of which refusal appellant here complains, would indicate that it is not an entirely accurate statement of the law.

 The expression ''ordinary care'' is in one sense a general, and in another sense a specific term. It refers to that degree of care which would be exercised at all times or at any particular time under existing conditions by the ordinarily prudent person. It assumes definition as to a specific amount of care only when used in connection with some particular situation usually referred to as ''under the circumstances.'' But if the expression ''ordinary care'' is to have any significance at all, the word ''ordinary'' cannot be modified by such words as ''more'' or ''less.'' Care is either of that degree which is ordinary under the circumstances or it is not. It may be more than ordinary or less than ordinary, but it cannot be more ordinary or less ordinary. If it is more or less than ordinary it thereupon ceases to be ordinary at all.

Unquestionably if the word *such* were to be deleted from the proposed instruction, there could be no question concerning its propriety as a correct statement of the law or its application to the facts of this case. But in its present form, the compelling interpretation of the language used therein is that the words ''such care'' refer to the composite expression ''ordinary care'' and not merely to the word ''care'' alone. Unless this be considered as the correct interpretation, then the word ''such'' is superfluous and has no meaning, for why would the simple word ''care'' be referred to as *such* care if it were being thought of only as a generic term? In English expression, and particularly in legal phraseology, use of the word ''such'' is an accepted method of referring back, but in so doing the reference is specific and refers to the exact subject matter theretofore named or described, which in this case would be not merely ''care'' but ''ordinary care.'' If this interpretation be correct then in the questioned instruc-

tion appellant was asking the court to instruct the jury that a greater amount of "ordinary care" was required of defendant, and this would have been an inaccurate statement of the law and misleading.

It may be argued that even conceding the merits of the foregoing discussion, the idea sought to be conveyed to the jury would still have been obvious and that the members thereof would not have been misled by any such fine distinctions. But we cannot with confidence say that a mere inaccuracy of expression is unimportant and unworthy of consideration, for we are committed by a long line of decisions to the proposition that juries may be influenced by such technical inaccuracies. In *Lasater* v. *Oakland Scavenger Co., supra,* it was held that an instruction containing the expression "a greater degree of care" was erroneous because the word "degree" rather than the word "quantum" or "amount" was used to indicate the character of the variations in care. It is stated in the opinion, at page 221:

". . . The degree of care required of a person for his own safety is always the same, i.e., ordinary care, although in some circumstances the quantum or amount of care required to reach the degree of ordinary care is greater than in others. While neither courts nor lawyers have uniformly observed this distinction in terminology, it is a *substantial* one and well established in our law." (Emphasis added.) (See also *Barry* v. *Maddalena,* 63 Cal.App.2d 302 [146 P.2d 974].)

It would seem then, in view of the rule just quoted from *Lasater* v. *Oakland Scavenger Co., supra,* that the instruction disapproved in *Dawson* v. *Lalanne, supra,* and hereinbefore quoted, is a correct statement of the law and the instruction approved therein, which is the identical one refused by the trial court here, is not a correct statement. It is a little difficult to believe that the ordinary lay person, sitting as a juror, would, within the usual period of service, absorb enough from the proceedings and association to recognize such fine distinctions, but legally they are charged with this duty, though their ability to perform may not always measure up to this responsibility.

As stated, the expression "a greater amount of *such* care," meaning a greater amount of ordinary care, is a technically inaccurate statement of the applicable rule of law. The inaccuracy may have meant but little to a jury, but a careful reading and analysis of the proposed instruction by one exposed to training in the law would seem to imply that

the driver or operator of the automobile was required to use something in the way of care over and above the ordinary care with which the instruction first states that both plaintiff and defendant were chargeable. Such, of course, is not the law and since the instruction does not represent an accurate statement thereof, it was not error for the court to refuse to give it.

In *Cucinella* v. *Weston Biscuit Co., supra,* we also find this language at pages 81-82:

". . . The fault in this case is not one of affirmative misstatement of any rule of law but of failure to explain more fully that in the application of the general rules of law which were correctly declared, the jury, as a matter of law, as well as factually in using common sense, good judgment and general knowledge, should recognize that the force of inertia of a heavy, fast-moving vehicle is greater than that of a comparatively light and slow-moving pedestrian and that the respectively ensuing potentialities of harm and devolving responsibilities vary accordingly."

With this pronouncement in mind and also bearing in mind that the trial court in the case before us gave the commonly accepted definition of ordinary care, together with a proper definition of negligence, it would seem that if a jury is to be charged with the knowledge, which of course is common knowledge "that the force of inertia of a heavy, fast-moving vehicle is greater than that of a comparatively light and slow-moving pedestrian and that the respectively ensuing potentialities of harm and devolving responsibilities vary accordingly," that they here must be charged with ability to apply the given definitions of ordinary care and negligence to this knowledge which must result in the inevitable conclusion that ordinary care in the operation of a "heavy, fast-moving vehicle" of necessity involves a greater amount or quantum of care than would be involved in the walking of a "comparatively light and slow-moving pedestrian" on the highway.

█ An incorrect statement of law in an instruction to a jury is error, even though it may not be of sufficient moment to merit reversal, as is also failure to state to the jury all those rules of law, particularly if submitted by the parties as instructions, which must be deemed reasonably necessary to permit persons of ordinary intelligence to apply the law of the case to the evidence. (*Duncan* v. *J. H. Corder & Son,* 18 Cal.App.2d 77 [62 P.2d 1387].) But it would

appear a bit inconsistent to assume that a jury can absorb, remember and apply all the definitions and rules with the occasional alternatives and distinctions contained in the ordinary set of instructions, taking perhaps the better part of an hour for the court to give, and then to say that they lack the simple intelligence to apply them, unless selected ones are emphasized and explained. Here the usual and proper instructions were given on the subject of ordinary care and the obligations of the respective parties thereunder. These, aided by the instruction concerning the duty of persons using a highway, were adequate and no further or special instruction pertaining to the relative amounts of care required of the parties was, under the circumstances of this case, necessary.

Appellant next contends that it was error for the court to have given the following instruction requested by defendant:

"You are instructed that where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the dangerous way, and is injured, such person is guilty of contributory negligence and cannot recover damages against the defendant."

Appellant's most serious contention here is that the instruction is defective as omitting the element of proximate cause.

There is no question that standing alone this instruction does omit the element of proximate cause, but it would seem from a consideration of other instructions given on this subject that no prejudicial error resulted from such omission. Although it is true that a misstatement of an essential principle of law ordinarily is not cured by the giving of other instructions on the subject, it is also well settled that all instructions must be considered as a whole, and it does not always follow that the giving of an instruction deficient in a respect which is covered by other instructions, will always mislead the jury and warrant a reversal.

"In reviewing instructions, the appellate court must read the charge as a whole and give the instructions a reasonable construction from the standpoint of their probable effect upon the jury." (*Wells* v. *Lloyd*, 21 Cal.2d 452, 458 [132 P.2d 471]; *O'Connor* v. *City & County of San Francisco*, 92 Cal. App.2d 626 [207 P.2d 638]; *Dennis* v. *Gonzales*, 91 Cal. App.2d 203 [205 P.2d 55].)

Here, prior to the giving of the questioned instruc-

tion, the court fully advised the jury upon the issues of contributory negligence and proximate cause. After the jury had retired, it returned to court and requested a rereading of the instruction pertaining to proximate cause, at which time the court elaborated at length upon the subject. In view of this reinstruction with emphasis on proximate cause it is extremely doubtful that the failure to include it as an element of the questioned instruction misled the jury. It was not reread when the jury was returned to court. Other proper instructions explaining proximate cause in connection with the issue of contributory negligence were reread and the very last statement by the court before the jury re-retired was as follows: ''The element of proximate cause is involved either in the principal negligence or in the contributory negligence feature of this case. All right, you will retire again and attempt to arrive at a verdict.'' We find that under those circumstances there was not reversible error.

Another criticism of this instruction stoutly urged by appellant is that it recognizes and instructs the jury regarding a choice of only two ways instead of a choice of four possible ways of walking along a highway. The proposition is stated by appellant as follows: ''The instruction assumes that there were just two ways to proceed down the highway as a pedestrian. There were, in fact, four ways to proceed, on the left or right shoulder or on the left or right portion of the roadway proper. On the facts of the case and the instructions given, the jurors could have believed that the 'perfectly safe' way was close to the pedestrian's left-hand edge of the highway and that any other way was the 'dangerous way.' This is not, of course, the law because the law does not attempt to state upon which side of the *highway,* as distinguished from *roadway,* a pedestrian may walk.''

We are unable to concede the logic of this argument. It is not questioned by either party that plaintiff was walking on the right-hand *portion* of the highway. The only question presented to the jury was whether he was walking on the paved portion or ''roadway'' or on the right shoulder. The trial court, as part of the instructions, read section 83 of the Vehicle Code to the jury which defines the term *''roadway''* as that portion of a highway, improved, designed or ordinarily used for vehicular travel, and *''highway''* as covering not only that portion used for vehicular traffic but also for pedestrian travel, or in other words the shoulder. The court then read section 564 of the Vehicle Code:

"No pedestrian shall walk upon any roadway outside of a business or residence district otherwise than close to his left hand edge of the roadway."

Following this the jury was instructed that the place where the accident occurred was not in a business or residential district, and further that: "Section 564 of the California Vehicle Code 'only requires that a pedestrian walk upon the lefthand side of the *roadway*, and does not attempt to prescribe upon which side of the *highway* he may walk.'" (Emphasis added.) Also following was this instruction:

"Conduct which is in violation of California Vehicle Code, Section 564, . . . read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise.

"However, in this action, *a violation of law is of no consequence unless it was a proximate cause of or contributed, in some degree as a proximate cause, to an injury* found by you to have been suffered by the plaintiff." (Emphasis added.)

It may be plainly seen from the above that the court very clearly told the jury that even though they found appellant to have been walking on the right-hand side of the "roadway" in violation of the statute this was of no consequence unless it proximately caused or contributed to appellant's injury.

We know of no reason why, when the evidence is undisputed that appellant was walking on the right-hand portion of the highway, the trial court should have been concerned with or charged with the duty of instructing the jury concerning possibilities existing on the other side of the highway. What the court said in effect was that where his presence on the right-hand portion of the highway was undisputed and where thereupon he had a choice of walking either on the "roadway" or on the shoulder he must be considered as having acted negligently if in violation of Vehicle Code, section 564, he chose to walk on the "roadway" rather than on the shoulder.

Aside from the fact that the instruction omits the element of proximate cause and describes any spot on earth as "perfectly safe" rather than "relatively safe" we cannot see that it is not a correct statement of the law.

■ Appellant next contends that it was error for the trial court to have refused to give this instruction requested by the plaintiff:

"It is the duty of a driver of an automobile when the view is unobstructed to see persons walking on the highway in front of the car."

As its reasons for refusing to so instruct, the court indicated that the principle had been covered elsewhere and that the proposed instruction was not sufficiently qualified with respect to distance, exceptional conditions, etc. It would appear that the court was correct, for the instruction contains no qualification as to distance or otherwise and this "duty to see" rule was fully and fairly covered by the instruction concerning defendant driver's duty "to keep a vigilant lookout ahead for other persons lawfully using the highway and to anticipate the presence of such persons" and his "duty under the law to keep his machine under control as would enable him, under the exercise of ordinary care, to avoid collision." There was no error in refusing to instruct in the unqualified language of plaintiff.

■ Finally, appellant contends that it was error for the trial court to give this instruction requested by defendant:

"You are instructed that it is the duty of a person walking upon a highway to use ordinary care in looking for objects that may cause him injury and to see and heed that which, by such looking, may have been visible to him, in the exercise of ordinary care and caution. He had no right not to look or to look carelessly. To look carelessly or heedlessly is as negligent as not to look at all."

In support of this contention appellant alleges that said instruction is not a correct statement of the law applicable to the case and that to so instruct led to prejudicial error in view of the conflict in the evidence regarding plaintiff's physical position on the highway at the time of the accident.

We entertain no doubt whatever that this instruction is correct as a general statement of the law. But in cases involving collisions between pedestrians or vehicles traveling in the same direction, there has also grown up in our case law an exception to this general rule which renders the general rule misleading if given alone and without noting

the exception. In the early case of *Blackwell* v. *Renwick*, 21 Cal.App. 131 [131 P. 94] (decided in 1913), wherein plaintiff and ·his wife were walking along a car track near the center of the roadway along which there was a sidewalk provided for pedestrians, plaintiff was struck from the rear by an automobile traveling along the roadway in the same direction as plaintiff and his wife. Judgment in favor of plaintiff was sustained on appeal. At page 135 of the opinion we find this language:

"Neither can it be said as a matter of law that plaintiff was negligent in not looking back up the street to observe whether there were vehicles approaching before proceeding southerly. It cannot be said that had he observed the approach of the automobile before he and his wife started to move in a southerly direction they could not have reasonably and prudently started on their course along the very portion of the street traversed by them up to the time of collision. *It certainly was not their duty to turn about constantly and repeatedly to observe the approach of possible vehicles from the rear* where the drivers of such vehicles could plainly observe them in time to give warning or turn out and avoid a collision." (Emphasis added.)

This rule was approved and followed in *Shannon* v. *Thomas*, 57 Cal.App.2d 187 [134 P.2d 522], and was followed in *Wright* v. *Ponitz*, 44 Cal.App.2d 215 [112 P.2d 25], both of which were cases in which a party who was pushing an automobile on a public highway was struck from the rear. (See also *Bogan* v. *White*, 137 Cal.App. 150 [30 P.2d 429]; *Nickell* v. *Rosenfield*, 82 Cal.App. 369 [255 P. 760]; and *Ducat* v. *Goldner*, 77 Cal.App.2d 332 [175 P.2d 914].)

In *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 P. 709, 41 A.L.R. 1027] (decided in 1925), at page 95, the court said:

"It is settled law that pedestrians have a right to travel anywhere upon a public highway, and it is, therefore, not negligence in them to do so. This is the common-law rule and our legislature has not changed or modified it. (*Raymond* v. *Hill*, 168 Cal. 473, 482 [143 P. 743].) Nor is a pedestrian under legal duty to look back or watch behind to see whether he or she is in danger of being struck or run down by any vehicle approaching him or her from the rear. (*Raymond* v. *Hill, supra*; *Devecchio* v. *Ricketts*, 66 Cal.App. 334 [226 P. 11]; *Idemoto* v. *Schneidecker*, 193 Cal. 653 [226 P. 922].) Of course, pedestrians, as is true of every person who travels

over the highways by whatsoever means or mode, must exercise reasonable or the due amount of care, considering the conditions existing as to highways, for their own safety. If they fail in the exercise of such care and themselves thereby contribute proximately to the cause of any injury they may sustain at the hands of one having an equal right to use the highways, or if such failure is the sole cause of the damage they have suffered, then, of course, they have no ground upon which to base just complaint."

As noted, the Hatzakorzian case was decided in 1925. Since 1935, at least, when section 564 of the California Vehicle Code was enacted, it has not been the law as stated in the Hatzakorzian case that, ". . . pedestrians have a right to travel anywhere upon a public highway, and it is, therefore, not negligence in them to do so." In the case at bar there was considerable conflict in the evidence as to just where on the "roadway" appellant was traveling at the time he was struck. As pointed out by appellant, and as discussed above, the terms "roadway" and "highway" are not synonymous. "Roadway" covers the part ordinarily used for vehicular travel. "Highway," on the other hand, includes the shoulders as well. (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674, 680 [102 P.2d 422] ; *Summers* v. *Dominguez*, 29 Cal.App.2d 308 at 311 [84 P.2d 237].) In the Summers case, at page 312, we also find this language:

"The statute [section 564 of the Vehicle Code] only requires that a pedestrian walk upon the left-hand side of the *roadway*, and does not attempt to prescribe upon which side of the *highway* he may walk." (Emphasis added; see also *Lesser* v. *McCullough*, 90 Cal.App.2d 586, 590 [203 P.2d 832].)

The latest pronouncement by our Supreme Court on the duty to look appears in the case of *Francis* v. *City & County of San Franicsco*, 44 Cal.2d 335 [282 P.2d 496]. That is an intersection crossing case, but in it the court points up the fact that the measure of the duty to look cannot be divorced from the facts of each individual case or from the standard of conduct of the ordinarily prudent person. Therein, at page 367, the following quotation from *Salomon* v. *Meyer*, 1 Cal.2d 11, 15 [32 P.2d 631], is cited with approval:

"Whenever there is room for an honest difference of opinion between men of average intelligence the question of whether the plaintiff was negligent in failing to look again in the direction from which the defendant's car was approaching is a question of fact for the jury and the finding of the triers

of fact is conclusive. (*McQuigg* v. *Childs*, 213 Cal. 661 [3 P.2d 309].)''

██ In the case at bar the jury was instructed regarding appellant that: ''He had no right not to look or to look carelessly.'' There was no qualification placed upon this duty to look conditioned upon his actual position on the highway at the time he was struck. Appellant points out, and with substantial logic in his argument, that the jury might, with valid reason, have concluded from this instruction that appellant was under a duty to look back even though he were walking, as he testified, on the shoulder and not on the roadway. The instruction, he argues, could under the circumstances, convey only one meaning to the jury, viz., that he was under a legal duty to look back, regardless of where he was walking on the highway, which is not the law.

We are convinced of the merit of this argument. Without receding from our position that juries may not always be impressed with or understand the fine legalistic distinctions we sometimes draw, it seems obvious that if they gave any detectable consideration to this instruction, they could hardly have reached any conclusion other than that appellant, regardless of his position, was under a legal duty to look back and that a failure to do so would constitute contributory negligence on his part. This would seem to be the most reasonable conclusion to be drawn, even though the language charging that: ''He has no right not to look or to look carelessly,'' is prefaced by the statement that: ''. . . it is the duty of a person walking upon a highway to use ordinary care to look for objects that may cause him injury . . .'' If appellant was actually walking on the shoulder at the time he was struck, rather than on the roadway, he would have had little reason to anticipate that an automobile whose driver was exercising due care in using the highway might ''cause him injury.'' He had a right to assume, in the absence of some evidence to the contrary, that any driver using the highway was exercising due care in so doing.

In view of the evidence in this case, it seems at least as probable that the jury based its verdict on a finding of contributory negligence on the part of appellant as upon a finding of no negligence on the part of the defendant. Considering the conflict in the evidence as to just where appellant was walking at the time he was struck, there is no means of knowing whether the jury placed him upon the ''roadway'' or upon the shoulder. If upon the shoulder, and the verdict

was based upon a finding of contributory negligence by reason of the fact that appellant failed to look back, or if upon the shoulder and in the exercise of ordinary prudence he had no occasion to anticipate danger from an approaching automobile and failed to look at all, the verdict would be erroneous. Since there is no means of knowing that the instruction as given, which we consider erroneous under the facts of the case, did not lead the jury into error, the verdict cannot be allowed to stand. (*O'Meara* v. *Swortfiguer*, 191 Cal. 12 [214 P. 975]; *Oettinger* v. *Stewart*, 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221]; *Moss* v. *Stubbs*, 111 Cal.App. 359 [295 P. 572, 296 P. 86]; *Thompson* v. *M. K. & T. Oil Co.* 5 Cal.App.2d 117 [42 P.2d 374].)

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 20, 1955. Shenk, J., and Edmonds, J., were of the opinion that the petition should be granted.