[Civ. No. 17603.   First Dist., Div. One.   Apr. 28, 1958.]

RUSSELL SCOTT, as Executor, etc., Respondent, v. CLARE BELLE MACKEY, Appellant.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Appellant.

Bardin, Cunningham & Leach and Bardin & Cunningham for Respondent.

PETERS, P. J.—On Monday, March 12, 1956, at about 7:55 a.m., appellant Clare B. Mackey, driving a new Cadillac convertible toward Salinas on the two-lane Salinas-Monterey highway, drove into the traffic lane used by traffic traveling toward Monterey and collided with a Chevrolet pickup truck proceeding toward Monterey and operated by Earl Van Emon. Admittedly the Cadillac at the moment of impact was in its wrong lane, and admittedly the right side of the Cadillac collided with the front of the Chevrolet. As a result of the accident Van Emon was so seriously injured that he died two days later. Russell Scott, as the executor of Van Emon's estate, brought this action for the wrongful death of Van Emon. The jury brought in a verdict of $38,665.53 in favor of the plaintiff. Defendant appeals.

The major attack of appellant is upon the instructions. A microscopic analysis is made of many of the instructions, and then by resort to complicated, artificial and technical reasoning a possible construction of these instructions is arrived at which appellant claims is erroneous. It would be most unusual for a jury to engage in the mental gymnastics suggested by appellant. In fact, it is extremely difficult for this court to follow the mental processes by which appellant comes to the conclusion that the instructions are erroneous. We have read the entire charge. It is fair, complete and reasonable. Far from being erroneous or unfair to appellant there were many instructions given in her favor which should not have been given. Thus the court gave a whole series of instructions on the doctrine of unavoidable accident. These were, of course, in favor of appellant, and she, therefore, does not object to the giving of them. Such instructions should not have been given. In *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500], decided in January of 1958, the Supreme Court held that instructions on unavoidable accident serve no useful purpose, are confusing and should not be given, and reversed a defendant's judgment on this ground alone.

The decisive factual question presented to the jury was what caused appellant to cross into the wrong lane? Was it because of the negligent operation of her vehicle, or was it

because she was bumped from the rear by another vehicle and so lost control of the car? There was evidence to support either theory, but a reading of the transcript discloses that the evidence in support of the implied finding of the jury that the accident was proximately caused by reason of appellant's negligent operation of her automobile is not only substantial but practically overwhelming. Under such circumstances it would take a most serious error to compel a reversal. No such error here appears.

Mrs. Mackey testified that she was driving the practically new Cadillac, which was equipped with power brakes and steering, toward Salinas at not over 50 miles per hour when, a couple of miles before reaching the scene of the accident, she was slowed down by traffic conditions to 20 to 25 miles per hour. She proceeded at that speed for about two miles. During most of this time she was behind a sedan which was following an old pickup truck. There was no passing because of a stream of traffic proceeding toward Monterey. Finally the sedan passed the pickup. Mrs. Mackey followed the pickup for a short distance and then swung partially to her left to see if she could pass. The approaching traffic was too close for her to pass the pickup so she swung back into her own lane and "probably" straightened out her car in her lane of traffic. She then testified that she felt a "bump" from the rear of her car. She was confused as to just when this bump occurred. She could not remember whether she was turning to the left or to the right when the bump occurred, but she did remember that she then lost control of her car and it swerved. The bump did not throw her out of her seat nor did it cause her to release the steering wheel. She does not know whether she applied her brakes, but remembers that when she swung to her right her car went over onto the shoulder and then veered to her left across the road. At one time she testified that it was either while she was on the shoulder or just as she was pulling back to her left that she felt the bump. At another point she testified that she did not know whether the bump came before or after she was on the shoulder, and at another that she thought she was in her proper lane when she felt the bump. She recollected that just before the accident a car was following her very closely, but she could not recollect the distance. At the trial she testified that she had told an investigating officer about this bump.

A traffic officer, Davenport by name, arrived at the scene of the accident shortly after it occurred. He fixed the point

of impact as in the Monterey lane and testified that Mrs. Mackey dictated a statement which he wrote into his report. Significantly, in that statement the bump is not mentioned. The report states that Mrs. Mackey declared that when she pulled to the right her car went onto the shoulder and "bounced on the shoulder." She then pulled to her left and her car "went out of control too far to the left" and the accident occurred. The officer testified that Mrs. Mackey did not complain to him about a car following her too closely, but suggested that perhaps something had gone wrong with the power steering. At the trial she testified that she was familiar with power steering and that nothing had gone wrong with it so far as she knew.

The officer also testified that while he was investigating this accident another occurred and he identified certain skid marks appearing in the photographs as being caused by the Cadillac and the Van Emon truck.

A Charles Tucker stopped at the scene of the accident and heard Mrs. Mackey tell the officer that her car "pulled to the right and it kind of scared her and she jerked it back to the left and it got away from her." He heard nothing about any bump.

Mr. Mackey, who arrived at the scene of the accident about five minutes after it occurred, testified that he was present when his wife gave the statement to the officer, and he heard her tell the officer about the bump. Nevertheless, both he and his wife signed the statement which contains no reference to the bump.

A witness who saw the accident and who was following the Cadillac just before it occurred, testified that there was a Chevrolet between her and the Cadillac that was following the Cadillac "closely," but she could not state how closely. She did not observe any contact between this Chevrolet and the Cadillac.

Several experts testified that there were marks on the rear bumper of the Cadillac indicating that some force had there been applied.

On this evidence the jury brought in its unanimous verdict for the plaintiff, and defendant appeals.

■ As already pointed out, the main attack is upon the instructions, many of which are challenged by appellant. It would serve no useful purpose to set forth all of the instructions assailed. A few examples will demonstrate the nature

of the attack. Thus, appellant challenges the following instruction: "It is the duty of the driver of any vehicle using a public street or highway to exercise ordinary care to avoid placing himself or another person in danger; to use like care to avoid an accident from which injury might result; to be vigilant at all times, keeping a lookout for traffic and other conditions to be reasonably anticipated; and to keep the vehicle under such control that, to avoid a collision with any person or with any other object, he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent driver in like position."

The contention made is that, while this instruction states the duty to exercise "ordinary care" as to some things, it erroneously fails to do so in reference as to being "vigilant" and the things thereafter mentioned. Obviously, the words "ordinary care" did not have to be set forth in each phrase of the instruction. Such limitation would naturally be implied by anyone reasonably interpreting the language used. The instruction has been approved in several cases. (*Duff* v. *Schaefer Ambulance Service, Inc.*, 132 Cal.App.2d 655 [283 P.2d 91]; *Jeffs* v. *LaGore*, 131 Cal.App.2d 181 [280 P.2d 140]; *Larson* v. *Holland*, 118 Cal.App.2d 520 [257 P.2d 1014].)

Equally without merit is the contention that it was prejudicial error to read portions of sections 525, 527 and 530 of the Vehicle Code to the jury. Section 525 requires vehicles to be driven on the right half of the roadway, except under certain circumstances not here involved. Section 527 requires drivers proceeding in opposite directions to pass each other on the right and to give to the other driver at least one-half of the roadway. Section 530, subdivision (a), specifies the limitations imposed when one vehicle overtakes and attempts to pass another, and requires the overtaking vehicle to return to the right-hand side of the roadway before coming within 100 feet of an approaching vehicle. It seems to be appellant's argument that these sections were inapplicable to the facts here involved because her car "crossed" the highway and was not "driving on or along" the highway when the accident happened. The contention is devoid of merit. In view of appellant's statement to the investigating officer that she pulled out to pass a slow moving vehicle, saw she could not make it, pulled the car to the right so far that it started to bounce on the shoulder, and then jerked it to her left, and that then her car went out of control, the code sections in question

were clearly applicable. Admittedly, her automobile at the time of the collision was being driven on her left side of the highway. The sections are clearly applicable and were properly read to the jury.

■ Appellant also objects to an instruction that properly defined the word "presumption," and then stated that a presumption is "evidence and continues until and unless overcome by contrary evidence." The objection is made that the word "overcome" was not defined, and that without a limiting definition, it means more than simply rebut or balance, and so imposed too great a burden on her. The challenged instruction was given immediately after one informing the jury that "all witnesses are presumed to speak the truth. This presumption, however, may be repelled by the manner in which he or she may have testified, by the character of his or her testimony, by his or her motives or bias, or by satisfactory contradictory evidence, or by evidence that he or she has made at other times, statements inconsistent with his or her present testimony." In this context the challenged instruction could not have been misleading.

■ The purpose of the attack on the "overcome" instruction is disclosed by the next instruction challenged. The court read the three Vehicle Code sections and then told the jury that: "Conduct which is in violation of California Vehicle Code 525, 527 and 530 just read to you constitutes, in itself, negligence. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that she was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence."

Appellant in her brief sets forth only the first two sentences of this instruction and omitted to mention the last two sentences. She contends that under the two sentences she quotes, and the "overcome" and statutory instructions above mentioned, the jury was told that the law directed a presumption that she had not exercised ordinary care unless she produced evidence of greater weight than the presumption. Thus, so it is contended, the jury was instructed, in effect, that she had the burden of proof of showing that she was not negligent. This argument is developed at some length.

There is no real basis for complaint in these instructions. The jury was told that the presumption created by the statutes was not conclusive. Of course, the violations of the statutes, if a proximate cause of the injury, constituted negligence *per se*. (See cases collected 35 Cal.Jur.2d 510, § 22; see also *Shehtanian* v. *Kenny*, 156 Cal.App.2d 576 [319 P.2d 699].) Admittedly, appellant was on the wrong side of the highway at the time of the collision. This established, prima facie, a violation of the pertinent sections of the Vehicle Code. The jury was simply told that, unless those violations occurred without the fault of appellant, that is, by something that would excuse or justify her conduct, she would be presumed to be negligent. That is sound law. It should also be mentioned that the instruction in question has been approved in many cases, including *Combs* v. *Los Angeles Railway Corp.*, 29 Cal.2d 606 [177 P.2d 293]; *Kalfus* v. *Fraze*, 136 Cal. App.2d 415 [288 P.2d 967]; *Rangel* v. *Badolato*, 133 Cal. App.2d 254 [284 P.2d 138].

Similar attacks are made on several other instructions. A reading of these and the other instructions indicates that the jury was fully and properly instructed on negligence and on the defendant's lack of liability if the accident occurred by a force beyond her control. The jury was told at length that whether the accident was or was not avoidable was a question of fact for the jury to determine. They were told several times that if they found the accident occurred without having been caused by appellant's negligence then the accident was unavoidable and their verdict must be for appellant. Thus, the vital question of fact involved was left to the jury. No error appears in these instructions.

The court gave a general instruction to the effect that the plaintiff has the burden of proving the affirmative allegations of the complaint and that the defendant has the burden of proof as to all affirmative allegations of the answer, and then instructed on unavoidable accident, which instructions, as already pointed out, should not have been given. The clerk's transcript discloses that appellant had affirmatively pleaded the defense of unavoidable accident, which, of course, she did not have to do. Thus, this general instruction was technically wrong, if the jury had known that unavoidable accident was affirmatively pleaded. But there is no showing that the jury knew this was so. The jury was instructed at length on proximate cause and burden of proof. The challenged instruction could not possibly have been prejudicial.

██ Certain instructions are challenged as being contradictory. We have read them. They are neither contradictory nor erroneous. No useful purpose would be served by setting them forth in this opinion. Appellant also attacks the instruction defining the standard of care owed by the ordinary prudent person. After giving the conventional statement defining ordinary care the court stated: "It should be specified that the care to be exercised by a person of ordinary prudence varies with the condition under which he is called upon to act. In other words, the care that an ordinary prudent person must use in the exercise of ordinary prudence in dealing with agencies that, because of power or momentum or for any other reason, are liable to do great injury, is very much greater than under other circumstances."

The appellant's claim is that by this instruction the jury was told that the care required of persons who drive heavy and powerful Cadillacs is very much greater than under other circumstances. ██ Of course, the rule is that the care which the ordinary prudent person must exercise varies with the circumstances, and that the caution required when driving an automobile "must be adequate to that responsibility as related to all the surrounding circumstances." (*Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71, 76 [265 P.2d 513].) The instruction so providing was upheld in that case, and many cases cited in support of the ruling. ██ It is too elementary to require further discussion that, although the degree of care does not change, as the possibility of danger and injury to others increases, the amount of care which the ordinary prudent person is required to exercise becomes greater. That is all the challenged instruction states.

██ Appellant's last attack on the instructions is that the trial court committed error in not giving an instruction on the presumption of innocence of crime. The court properly instructed that the question before the jury was whether, under the evidence, did the appellant "act as an ordinary prudent man would act?" This instruction did not mention the presumption of innocence from crime or wrong.

Appellant would have been entitled to such an instruction had she asked for it, but she did not. This precludes her from now contending that it should have been given. The instruction that was given was a general instruction. It was correct as far as it went. If appellant wanted a limitation on it, or desired it to be specific, she should have so requested. Having

failed to do so, she may not now properly complain. (See cases collected 24 Cal.Jur. 796, § 74.)

The only other point necessary to mention is the contention that respondent's counsel improperly brought the subject of insurance into the case. She herself admits that the incidents about to be discussed by themselves "would be of no great moment," but when considered with the closeness of the case and the other serious errors "the misconduct becomes of serious gravity." (App. Op. Br., p. 47.) Since there were no other serious errors, and since the evidence strongly favors respondent, it would seem that appellant necessarily concedes that the incidents involved were "of no great moment." However this may be, an examination of the incidents discloses no reversible error.

Appellant in cross-examining Officer Davenport endeavored to bring out that Mr. Mackey on the afternoon of the accident or the day following had pointed out to someone certain skid marks. Plaintiff objected on the ground that such testimony was hearsay. The court then asked the witness whether the defendant was present at that time, and the witness answered that she was not. Counsel for respondent then asked, "Who was present?" The witness answered, "Mr. Mackey and an insurance adjuster—investigator, I don't recall his name." No objection was made to this statement nor was a motion to strike made. The court sustained plaintiff's objection to the question involved on the ground that it was hearsay.

Subsequently, respondent raised an objection to evidence in connection with certain skid marks on a photograph. He stated in voicing his objection: "[T]here is no evidence before this Court that these marks were pointed out by anyone other than Mr. Mackey and an insurance adjuster that went out there with Mr. ——" Appellant's counsel then interrupted with an objection to these remarks, pointing out that the witness, Davenport, did not "know who the other people were and if anything was said to him it would be hearsay," and asked for an admonition. The court then admonished the jury to disregard the remarks about the insurance adjuster.

Then, in argument to the jury, counsel for respondent, in referring to the skid marks which Mr. Mackey had subsequently pointed out, stated that Mr. Mackey did not say anything to the officer right after the accident but "waited until the next day when the officer went out there with the insurance adjuster—investigator and was pointed out to the

officer——'' Counsel for appellant objected and cited this as misconduct, stating that there was "no evidence of such in this case," and moved for a mistrial. The court denied the motion for mistrial but admonished the jury to disregard all statements concerning insurance and instructed them that no insurance company was a party litigant in the case and insurance had nothing to do with the case.

This does not show prejudicial error. The record contained a statement by Davenport that an insurance adjuster was present at the time, and no objection was made to this statement. Moreover, when respondent's counsel properly asked "Who was present?" there is no evidence that he knew or should have known that the witness would refer to the insurance adjuster. It is undoubtedly true that it was improper to refer to the insurance adjuster in the argument in view of the court's admonitions during the trial. But such impropriety was not prejudicial. After all, respondent's counsel did nothing more than to state what was already in the record, unobjected to. Moreover, in view of the careful admonitions and the instruction on the issue, the error was only of slight significance.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 28, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1958.